ence to be accorded to warrants." *Id.* at 109, 85 S.Ct. at 746.[8]

## III.

## CONCLUSION

For the reasons stated above, we will reverse the district court's order of July 6, 1992, granting defendants' joint motion for suppression of the evidence seized from their residences. We will remand the matter to the district court for further proceedings.

**Harold MASON, Appellant,**

v.

**Donna E. SHALALA, Secretary of Health & Human Services, Appellee.**

**No. 92–5395.**

United States Court of Appeals, Third Circuit.

Argued Feb. 26, 1993.

Decided June 1, 1993.

8. In light of our holding that there was substantial basis for the magistrate judge to conclude that there was probable cause, there is no need for us to address the issue as to whether the good-faith exception in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, applies.

Herbert L. McCarter (argued), Hackensack, NJ, for appellant.

Susan J. Steele (argued), Office of U.S. Atty., Newark, NJ, for appellee.

Before: HUTCHINSON and NYGAARD, Circuit Judges and POLLAK, District Judge.*

## OPINION OF THE COURT

LOUIS H. POLLAK, District Judge.

Appellant Harold Mason appeals the decision of the United States District Court for the District of New Jersey affirming the final decision of the Secretary of Health and Human Services ("Secretary") to terminate appellant's disability insurance benefits.

### I. *Factual and Procedural History*

Appellant Harold Mason, born on January 30, 1950, was hired by Martex Corporation in 1974 to work in shipping and receiving. On September 2, 1975, appellant suffered a severe back injury while on the job and was granted a period of disability. His disability benefits continued until March 1988 when, pursuant to a medical examination requested by the Secretary, the Secretary determined that appellant's medical condition had improved and that he was no longer disabled. Appellant requested reconsideration of the Secretary's decision, but reconsideration was denied on April 7, 1988.

A hearing on the termination of appellant's benefits was scheduled before Administrative Law Judge ("ALJ") Frederick Harap for October 31, 1988. Based on this hearing, ALJ

---

* Hon. Louis H. Pollak, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

Harap ruled on March 29, 1989 that appellant was no longer disabled and that he could be gainfully employed to perform light work.[1] *See* Appendix ("App.") at 82–85. Appellant appealed, and on November 27, 1989 the Appeals Council vacated ALJ Harap's decision and remanded the case for further consideration. The Appeals Council found that ALJ Harap had failed to provide a detailed explanation for his conclusion that appellant's medical condition had improved and that, therefore, the decision could not be said to be supported by substantial evidence. *See* App. at 78.

ALJ Harap held his second hearing on the matter on February 16, 1990. During this hearing, appellant gave extensive testimony on his medical history and his physical condition.

Describing the then current state of his injury, appellant stated that he suffered from severe lower back pain radiating into his left leg down to his toes. According to appellant, the pain flared both at times of rest and activity and lasted for approximately an hour once it began. *See* App. at 95–96. Appellant explained that he had undergone two surgeries for his injury that had improved his condition slightly but had not eased the pain. *See* App. at 98–100. Appellant noted that since his last operation in 1975 he had not sought or received medical treatment, having allegedly been told by his then treating physicians that there was nothing else that could be done for him. Appellant testified that to combat his pain he was taking nonprescription pain relievers. *See* App. at 96. While he had taken a prescription muscle relaxant for a time, appellant stopped after his doctor supposedly advised him that he would become "allergic" to the medication. *See* App. at 96.

Appellant also testified as to his daily routine and his physical abilities. Whereas his job before his injury required that he stand a full eight hours and lift objects between 50 and 60 pounds, appellant testified that he could now only stand for 10 to 15 minutes and could only lift objects weighing two or three pounds. *See* App. at 99, 100. Appellant stated that he had difficulty walking more than a few blocks or sitting for longer than 15 to 20 minutes. *See* App. at 99–100. After sitting for these 15 to 20 minutes, his back and legs became stiff and he needed to walk for 10 to 15 minutes. *See* App. at 106. Appellant also testified that he had trouble bending and needed assistance putting on his shoes and clothes. *See* App. at 103. Appellant explained that, given his physical limitations, he spent his days—about seventeen waking hours between 5:00 a.m. or 6:00 a.m. and 10:00 p.m.—watching television, reading the newspaper and lying down. *See* App. at 105. According to appellant, he did not play sports, help in household chores or even engage in social activities. *See* App. at 100–105. Two or three times a week, appellant would drive his car for a distance of about five miles. *See* App. at 91.

Appellant testified that despite his injury he was able to return to work at Martex Corporation in a sheltered position in or around 1980. *See* App. at 118. According to appellant, he worked approximately two to three hours a day in a sitting job and was provided with a bed upon which he could lie when necessary. While appellant testified that he had the job for only a couple of weeks, App. at 107., it appears appellant continued in the job through 1981, *see* App. at 142, 187, 194, if not through 1984, *see* App. at 169.

In addition to appellant's testimony, ALJ Harap also considered medical evidence regarding appellant's physical condition. To assess appellant's current condition for signs of improvement, the ALJ needed first to review appellant's medical condition at a comparable point, which under the regulations was the date of appellant's last favor-

---

1. "Light work" is defined in the regulations as follows:

 Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. 20 C.F.R. § 404.1567(b) (1992).

able medical decision finding him disabled. *See* 20 C.F.R. § 404.1594(b)(1) (1992). Here, that date was November 25, 1981 in a ruling by ALJ Howes. Appellant's medical condition was apparently described to ALJ Howes in the medical reports of Dr. John C. Pellosie and Dr. Carl E. Rothschild.[2] Then, appellant's forward flexion was about 15 to 20 degrees and his lateral flexion was approximately 10 degrees.[3] *See* App. at 187, 194. Appellant stood erect, with a rigid back and with rigid legs. Both doctors concluded that appellant could engage in gainful employment. *See* App. at 188, 194. Dr. Pellosie completed a form suggesting, among other things, that appellant could walk, stand and/or sit for eight hours in an eight hour day, could lift 20 pounds frequently, could bend and stoop, and could pull. *See* App. at 188. Dr. Rothschild concluded that in the eight-hour work day, appellant could walk and stand for four hours intermittently, could sit for six hours intermittently, could lift up to ten pounds frequently, could carry up to ten pounds frequently, could climb stairs and ladders to a limited extent and could bend, stoop, push and pull to a limited extent. *See* App. at 194. Despite the medical evidence that appellant seemed able to perform sedentary work[4], ALJ Howes had nonetheless found that appellant was entitled to disability benefits. ALJ Howes concluded that appellant's sheltered job at Martex Corporation—a job appellant apparently had at the time of the hearing before ALJ Howes—was not "substantial gainful activity" under 20 C.F.R. § 404.1574(b)(2) since appellant earned less than $300 per month.

2. ALJ Howes does not specify that he relied on the medical reports of Dr. Pellosie or Dr. Rothschild. However, at the October 31, 1988 hearing before ALJ Harap, appellant's attorney stated that ALJ Howes relied on Dr. Pellossie's report. *See* App. at 114. And in ALJ Howes' ruling he cited Exhibit B–14 when describing appellant's condition in November 1981, *see* App. at 142, and "B–14" appears in the bottom right hand corner of the first page of Dr. Rothschild's report. *See* App. at 193. ALJ Howes also cited B–8 and B–9, but it is not clear what these documents are.

3. "Flexion," a variation of flection, is defined as the "act of flexing or bending." *Webster's Third New International Dictionary* 868 (1966).

The evidence bearing on appellant's medical condition as of the time of the second hearing before ALJ Harap in February of 1990 consisted of three doctors' medical evaluations:

(1) At the behest of the Secretary, Dr. R. Bagner, a board certified surgeon, examined appellant on February 23, 1988. The examination appears to be the only time Dr. Bagner examined appellant. Dr. Bagner observed that appellant walked with a slow cautious gate, was able to get on and off the examining table without difficulty, was not uncomfortable in the seated position during the examination, could perform the heel-and-toe walk without difficulty, and got dressed and undressed without assistance. *See* App. at 164. Describing appellant's range of back motion, Dr. Bagner noted that appellant's flexion was "limited to 50 (degrees) by pain." *See* App. at 164. Dr. Bagner also noted that appellant's extension was zero, his lateral flexion 10 degrees to the left and right, and that appellant experienced pain in both the prone and seated positions after doing a straight leg lift of 50 degrees of the left leg and 60 degrees of the right leg. Dr. Bagner found no atrophying of appellant's gluteal, thigh or calf muscles, but found that appellant had no reflexes in his left ankle.

(2) On October 11, 1988 Dr. Regina Hillsman, an orthopedic surgeon who was not board certified, examined appellant at his counsel's request. Like Dr. Bagner, Dr. Hillsman found that appellant's flexion was 50 degrees. Appellant's lateral flexion was determined to lack 35 degrees on both the

4. Sedentary work involves lifting no more than 10 pounds at a

time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567 (1992). A sedentary job should require no more than approximately 2 hours of standing or walking per eight-hour work day, and sitting should typically amount to six hours per eight-hour work day. *See* Social Security Administration, Social Security Ruling No. 83–10. (1983).

left and right side. Dr. Hillsman noted that appellant's reflex in the left Achilles was absent and that the left lower extremity presented paresthesia.[5] Dr. Hillsman commented that each of the maneuvers in the examination produced back, flank and gluteal pain in appellant, eventually causing increased spasticity in appellant's lower back such that Dr. Hillsman had to stop the examination briefly. After completing her examination, Dr. Hillsman concluded that appellant was "totally disabled overall and unable to function as [a] working unit." App. at 171.

(3) Finally, ALJ Harap had before him the medical report dated January 9, 1990 of a physician from the New Jersey Division of Vocational Rehabilitation. *See* App. at 176–177. The form report, responsive to a vocational counselor's inquiry asking the physician to "complete form and indicate how functional limitations are a handicap to employment." App. at 176, contained the following salient entries:

*FUNCTIONAL LIMITATIONS:* (describe functional impairment)

| | |
|---|---|
| Standing: | No long period (> 1 hr.) at a time |
| Walking: | Minimal |
| Climbing: | Minimal |
| Stooping: | Unable |
| Bending: | Unable |
| Lifting: | Not over 20 lb. |
| Use of hands: | No pulling |

App. at 177. Under the caption *"DIAGNOSIS,"* the physician checked boxes characterizing appellant's disability as "active," "stable" and "permanent." *Id.* Under *"RECOMMENDATIONS,"* the physician responded "None," both as to "Treatment (explain)" and "Further diagnostic study (explain)." *Id.* Under *"PROGNOSIS* (include degree of functional improvement anticipated)," the physician wrote: "No significant improvement expected." *Id.*

On April 10, 1990, after review of appellant's testimony and the three medical reports, ALJ Harap for a second time concluded that appellant was no longer disabled. In reaching this decision, ALJ Harap noted that he gave greater weight to Dr. Bagner's report than to Dr. Hillsman's because Dr. Hillsman was neither a board certified nor a treating physician.[6] Moreover, ALJ Harap determined that the appellant had "exaggerated the chronicity, intensity and frequency of his symptoms," since, in ALJ Harap's view, appellant's testimony belied his assertion that he was in severe pain. App. at 73. ALJ Harap found it significant that despite appellant's alleged discomfort, he had not received medical treatment since 1975, had not undergone physical therapy and did not take prescription drugs. In addition, ALJ Harap thought that appellant's testimony that he could sit for only "ten minutes" was contradicted by appellant's testimony regarding how he spent his days. *See* App. at 73.

Whereas in his March 29, 1989 decision ALJ Harap determined that appellant could perform light work, in his second ruling ALJ Harap concluded that appellant retained the residual functional capacity only to perform a "full range of sedentary work."[7] *See* App. at 74 (finding of fact no. 11). ALJ Harap found that appellant could "sit for up to six hours in an eight hour work day ... [could] stand and walk for at least one hour together, lift up to ten pounds and carry small articles." App. at 73. Based on this residual functional capacity and appellant's vocational profile—his relative youth, high-school education, and experience in low-level, semi-skilled work— ALJ Harap concluded that appellant was not disabled under Vocational Rules 201.28 and 201.29, Table No. 1, Appendix 2, Subpart P, Regulations No. 4.

The Appeals Council affirmed the ALJ's ruling on February 26, 1991, making the April 10, 1990 ruling the final decision of the Secretary.

Appellant, pursuant to 42 U.S.C. § 405(g), appealed the Secretary's decision to the federal district court, and the district court af-

---

**5.** "Paresthesia" is defined as "a sensation of pricking, tingling, or creeping on the skin having no objective cause and usu[ally] associated with injury or irritation of a sensory nerve or nerve root." *Webster's Third New International Dictionary* 1641 (1966).

**6.** ALJ Harap noted that Dr. Bagner was not a treating physician either.

**7.** *See infra* Part II, A for a definition of "sedentary work."

firmed on May 29, 1992. The district court found substantial evidence in the record of appellant's improved condition. Specifically, the district court noted that the medical evidence demonstrated that appellant's flexion had increased from 15 or 20 degrees to 50 degrees and that appellant's gait appeared to be less rigid than in 1981. In addition, the district court took note of the report of the physician associated with the New Jersey Division of Vocational Rehabilitation indicating that appellant could lift up to 20 pounds—10 pounds more than in 1980. Finally, the district court found it significant that two of the three examining physicians did not state that appellant was disabled. Although Dr. Hillsman did conclude appellant was totally disabled, the court believed the ALJ was justified in according less weight to that medical evidence since Dr. Hillsman was neither board certified nor a treating physician.

The district court also concluded that there was substantial evidence that the medical improvement was work-related since the improvement manifested itself in a physical ability to do sedentary work. In this regard, the district court noted that the report of the physician associated with the New Jersey Division of Vocational Rehabilitation provided evidence that appellant could lift 20 pounds and could stand for up to an hour. In addition, the district court cited the evidence in the record that appellant could sit for 15 to 20 minutes at a time. To the extent appellant's subjective complaints of pain may have affected his ability to perform sedentary work, the district court found that the ALJ had given due consideration to appellant's pain. The district court did not believe the ALJ had abused his discretion in discounting appellant's complaints of pain in light of the apparent inconsistency between appellant's description of his daily routine and his complaints of pain and in light of the medical evidence that served to discredit appellant's accounts of pain. The district court thus concluded that there was substantial evidence to support the ALJ's finding that appellant was not disabled within the meaning of the Vocational Guidelines.

## II. *Discussion*

Appellant challenges the Secretary's determination that he is no longer disabled. The Supreme Court has described a five-part test established by the Secretary to determine whether a person is disabled.

The first two steps involve threshold determinations that the claimant is not presently working, and has an impairment which is of the required duration and which significantly limits his ability to work. See 20 CFR §§ 416.920(a) through (c) (1989). In the third step, the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work. See 20 CFR pt. 404, subpt. P, App. 1(pt. A) (1989). If the claimant's impairment matches or is "equal" to one of the listed impairments, he qualifies for benefits without further inquiry. § 416.920(d). If the claimant cannot qualify under the listings, the analysis proceeds to the fourth and fifth steps. At these steps, the inquiry is whether the claimant can do his own past work or any other work that exists in the national economy, in view of his age, education, and work experience. If the claimant cannot do his past work or other work, he qualifies for benefits. §§ 416.920(e) and (f).

*Sullivan v. Zebley,* 493 U.S. 521, 525, 110 S.Ct. 885, 888–89, 107 L.Ed.2d 967 (1990). The first four steps are resolved. Appellant is not working and his impairment has lasted for more than twelve months, allowing appellant to pass through the two threshold issues. At step three, ALJ Harap found—and appellant does not quarrel with the finding—that appellant is not automatically entitled to benefits under 20 C.F.R. pt. 404, subpt. P, App. 1(pt. A) since the medical evidence showed that appellant's impairment was not on the list of those impairments presumed severe enough to preclude gainful employment. App. at 74 (finding of fact no. 3). At step four, ALJ Harap found—and the Secretary does not quarrel with the finding—that the evidence established that appellant's back injury continued to prevent appellant from returning to his past work. The issue in this case thus concerns the fifth step: whether there existed work for appellant in the na-

tional economy given appellant's age, education and work experience. Whereas the initial burden rested with appellant to demonstrate he was unable to engage in his past work, 42 U.S.C. §§ 416(i), 423(d)(1)(A), the ALJ's finding that appellant had satisfied that burden meant that the burden then shifted to the Secretary to show that other work existed in the national economy for appellant. *See Green v. Schweiker,* 749 F.2d 1066, 1071 (3d Cir.1984).

The fifth step is itself divided into two parts:

> First, the Secretary must assess each claimant's present job qualifications. The regulations direct the Secretary to consider the factors Congress has identified as relevant: physical ability, age, education, and work experience. See 42 U.S.C. § 423(d)(2)(A); 20 CFR § 404.1520(f) (1982). Second, she must consider whether jobs exist in the national economy that a person having a claimant's qualifications could perform. 20 CFR §§ 404.1520(f), 404.1566–404.1569 (1982).

*Heckler v. Campbell,* 461 U.S. 458, 460–61, 103 S.Ct. 1952, 1953–54, 76 L.Ed.2d 66 (1983) (footnotes omitted). Prior to 1978, the second question as to whether a job existed in the national economy suitable to a claimant was generally determined through reference to testimony by vocational experts. However, in 1978 the Secretary promulgated the medical-vocational guidelines, commonly known as "the Grids." These Grids, through use of a matrix incorporating a claimant's physical ability, age, education and work experience (the four factors Congress directed the Secretary to assess), establish Vocational Rules for whether a job exists in the national economy for a given claimant.

In the present matter, the ALJ referred to Vocational Rules 201.28 and 201.29 to con-

clude that work existed in the national economy for appellant—and, therefore, that claimant was not disabled. Under Rules 201.28 and 201.29,[8] a claimant (1) aged 18 to 44, (2) with a high school education or more, (3) with skilled or semiskilled work experience and (4) with the residual functional capacity for sedentary work, is not disabled. "Where a claimant's qualifications correspond to the job requirements identified by a [vocational] rule, the guidelines *direct* a conclusion as to whether work exists that the claimant could perform." *Campbell,* 461 U.S. at 462, 103 S.Ct. at 1955 (emphasis added).[9]

On review of the Secretary's decision denying disability benefits, the question before the reviewing court is whether the Secretary's factual findings are supported by substantial evidence. *See Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); 42 U.S.C. § 405(g). Substantial evidence means " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id.* at 401, 91 S.Ct. at 1427 (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216–17, 83 L.Ed. 126 (1938)). "A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence." *Kent v. Schweiker,* 710 F.2d 110, 114 (3d Cir.1983).

Under 42 U.S.C. § 423(f) (1988), disability benefits will only be terminated where there is substantial evidence demonstrating both medical improvement and the present ability to engage in substantial gainful activity. *See* 42 U.S.C. § 423(f) (1988). For the following reasons, we find that there was not substantial evidence to support the ALJ's conclusion that appellant had the residual functional capacity to do sedentary work and thus to engage in substantial gainful employment.[10]

---

8. Rule 201.28 and Rule 201.29 are identical except that Rule 201.28 applies where the work experience is not transferable and Rule 201.29 applies where the work experience is transferable.

9. Where the guidelines do not describe a claimant's disability accurately or where there is a borderline situation, the guidelines are not to be applied "mechanically." See 20 C.F.R. 404.-1563(a) (1982). If the claimant suffers limita-

tions not described by the guidelines—for example, nonexertional limitations—the ALJ must consider the additional limitations as well. 20 C.F.R. pt. 404, subpt. P. app. 2, § 200.00(d), (e).

10. As noted earlier, medical improvement is determined through a comparison of a claimant's medical condition at the time of the termination hearing with that claimant's condition at the time of the last favorable medical decision that the claimant was disabled. *See* 20 C.F.R. § 404.-

Moreover, we find that the ALJ was not justified in discounting Dr. Hillsman's medical evidence or in disregarding appellant's subjective complaints of pain.

### A. The Record Evidence

According to the Secretary's regulations, [s]edentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 CFR § 404.1567 (1992). A sedentary job should require no more than approximately 2 hours of standing or walking per eight-hour work day, and sitting should typically amount to six hours per eight-hour work day. See Social Security Administration, Social Security Ruling No. 83–10. (1983).

In his April 10, 1990 ruling, ALJ Harap concluded that:

[b]ased upon the record as a whole, ... the claimant can sit for up to six hours in [an] eight hour work day. He can stand and walk for at least one hour together, lift up to ten pounds and carry small articles.

App. at 73. The district court affirmed the ALJ's findings, noting that the record demonstrated that appellant could stand for up to one hour, could lift up to twenty pounds and could sit for 15 to 20 minutes at a time. App. at 14. However, an examination of the record suggests that there is not substantial evidence to support these conclusions regarding appellant's ability to stand, lift or sit.

■ Of the three medical examinations on record, only one—the medical report completed by the physician associated with the New Jersey Division of Vocational Rehabilitation—addresses appellant's ability either to stand or to lift items. The report states that appellant can stand for no longer than an hour and lift no more than 20 pounds. Although one medical report by an examining physician may constitute substantial evidence of a claimant's physical condition, see, e.g., De Lorme v. Sullivan, 924 F.2d 841, 846–47 (9th Cir.1991), this particular report alone may not. In contrast to the other two medical reports, the report from the New Jersey Division of Vocational Rehabilitation is but a two-page form, entitled "General Basic Medical Examination," that requires the physician only to check boxes and briefly to fill in blanks. The report does not call for explanations of the examining physician's medical conclusions—and no such explanations appear.

Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best. As we pointed out in discussing "residual functional capacity reports," where these so-called "reports are unaccompanied by thorough written reports, their reliability is suspect...." See Brewster v. Heckler, 786 F.2d 581, 585 (3d Cir. 1986); Green, 749 F.2d at 1071, n. 3 (citing O'Leary v. Schweiker, 710 F.2d 1334, 1341 (8th Cir.1983)). The only other record evidence before ALJ Harap pertaining to appellant's ability to stand or lift is appellant's testimony which created a far starker pic-

1594(b)(1) (1992). In this case, we face the peculiar situation where the claimant's medical condition was arguably medically improved under the regulations as of the November 25, 1981 hearing before ALJ Howes. At that 1981 hearing, two examining doctors presented medical evidence that appellant Mason's condition had progressed significantly since his surgery and that he was able to do sedentary work. ALJ Howes noted that the medical evidence of record "establish[ed] that the claimant has the maximum sustained residual physical capacity to perform sedentary work activity at most." App. at 143. ALJ Howes' decision that Mason was still disabled rested on the ALJ Howes' recognition that Mason's earnings at his sheltered job—a job

Mason held at the time of the hearing—reflected an inability to engage in substantial gainful activity under 20 C.F.R. § 404.1574.

The parties do not address how this court's consideration of appellant's medical improvement is affected by the fact that ALJ Howes determined that appellant was already able, or at least nearly able, to engage in sedentary activity in 1981. As a result it is unclear, for example, whether appellant's condition must have actually improved from the time of the 1981 hearing or needs only to have remained substantially the same. We will not attempt to resolve this or kindred questions as it is unnecessary to do so to decide the appeal.

ture. Appellant testified that he can stand for only 10 to 15 minutes and can lift only 2 to 3 pounds. App. at 99, 100. Since there appears to be no identifiable evidentiary corroboration of the quantitative recitals about standing and lifting in the New Jersey Vocational Rehabilitation form report, we conclude that there was not substantial evidence to support a finding that appellant could stand long enough or lift enough weight to perform sedentary work.

 Whether there is substantial evidence of appellant's ability to sit for six hours in an eight-hour day is a somewhat closer call. None of the examining physicians discussed how long appellant could sit. Dr. Bagner did observe that appellant sat through the interview without discomfort—an interview appellant testified lasted only 10 minutes, App. at 21—but Dr. Bagner did not estimate how long appellant could sit in an eight-hour day. The only evidence concerning appellant's ability to sit is found in appellant's own testimony. As mentioned earlier, appellant testified that he can sit for 15 to 20 minutes at a time. However, appellant also testified that after sitting for 15 to 20 minutes, he needs to walk for 10 to 15 minutes. App. at 106. This would mean that, on days when appellant was at his strongest, he would be able to sit for 20 minutes and only need to stand for 10 minutes afterward. Assuming appellant could repeat that pattern throughout the working day, he would have been able to sit—on his best day—for about five hours and twenty minutes. On other days, appellant's capacity to sit would range from four hours to just over five hours.

Yet, ALJ Harap concluded that appellant could sit for six out of eight hours. This decision was apparently based on the ALJ's judgment that appellant underestimated the length of time he could sit. ALJ Harap stated:

> although the claimant testified that he cannot sit or stand for more than ten minutes each, the description of his daily activities

shows that he does sit for more than ten minutes at any one time.

App. at 73. Setting aside the fact that appellant testified that he could sit for "15 or 20 minutes," App. at 100, *not* ten minutes,[11] the ALJ did not explain what aspect of appellant's daily routine persuaded him to believe that appellant could sit for longer than he professed he could. Appellant testified that he watched television and read for most of the day. While the ALJ may have inferred from this testimony that appellant was seated during these activities, it is at least equally possible that appellant changed his position throughout the day—sitting for a time, then lying down for a period, pacing about the room for a few minutes, and so on. While five hours and twenty minutes is fairly close to six hours,[12] four hours is not. We decline to conclude that uncertain inferences from appellant's testimony constitute substantial evidence of appellant's ability to sit for six hours in an eight-hour work day.

### B. *The Medical Evidence*

 In his April 10 ruling, ALJ Harap represented that he would not give as great weight to Dr. Hillsman's medical report as he would give to Dr. Bagner's report. The ALJ offered two reasons: Dr. Bagner was board certified while Dr. Hillsman was not; and Dr. Hillsman was not a treating physician and had only performed one examination of the appellant. Although it is clearly within the ALJ's statutory authority to choose whom to credit when witnesses give conflicting testimony, the ALJ "cannot reject evidence for no reason or the wrong reason." *Cotter v. Harris*, 642 F.2d 700, 707 (3d Cir. 1981).

The ALJ's decision to distinguish between Dr. Bagner and Dr. Hillsman on the grounds of board certification is unconvincing. While Dr. Bagner may have been board certified as a general surgeon, Dr. Hillsman was an orthopedic specialist. It is not apparent why, by virtue of board certification, the opinion of

---

11. Appellant also testified that he could stand for "[a]bout 10 or 15 minutes," App. at 99. "While the Referee may accept or reject testimony, he is not licensed to mischaracterize it." *Carter*, 834 F.2d at 66.

12. Under Social Security Ruling No. 83–10, the ability to sit six hours is not an absolute requirement: sedentary work requires that "sitting should generally total approximately six hours."

a general surgeon on orthopedic matters is entitled to greater weight than the opinion of an orthopedic surgeon. To the extent that the opinions are in conflict (and it is not readily apparent that they are, except as to the extent of appellant's pain and as to the ultimate conclusion with respect to appellant's disability), the opinion of the medical specialist would seem to deserve greater deference. *See Moore v. Sullivan,* 919 F.2d 901, 905 (5th Cir.1990).

■ The ALJ's second reason is even less persuasive. ALJ Harap could not reasonably distinguish between Dr. Hillsman and Dr. Bagner based on the fact that Dr. Hillsman was not a treating physician and had only examined appellant once. As ALJ Harap noted in his ruling, "the same [could] be said of Dr. Bagner." App. at 73. ALJ Harap's description of Dr. Hillsman's status as a non-treating physician and one-time examiner may well have been an implicit invocation of the treating physician doctrine—a doctrine long accepted by this court. *See, e.g. Gilliland v. Heckler,* 786 F.2d 178, 183 (3d Cir. 1986); *Podedworny v. Harris,* 745 F.2d 210, 216 (3d Cir.1984). Under that doctrine, a court considering a claim for disability benefits must give greater weight to the findings of a treating physician than to the findings of a physician who has examined the claimant only once or not at all. *See Kane v. Heckler,* 776 F.2d 1130, 1135 (3d Cir.1985). *See also Robertson v. Sullivan,* 925 F.2d 1124, 1126 (8th Cir.1991); *Loy v. Secretary of Health and Human Services,* 901 F.2d 1306, 1308 (6th Cir.1990). Since neither Dr. Hillsman nor Dr. Bagner was appellant's treating physician, the doctrine has no application to the present matter.

Thus we conclude that the grounds assigned by the ALJ for disregarding Dr. Hillsman's findings lack substantial support. An ALJ "may not reject [a physician's findings] unless he first weighs them against other relevant evidence and explains why certain evidence has been accepted and why other evidence has been rejected." *Kent,* 710 F.2d at 115 n. 5. *See also Carter v. Railroad Retirement Bd.,* 834 F.2d 62, 65 (3d Cir.1986).

**13.** *See supra* note 11 and accompanying text.

### C. *Appellant's Complaints of Pain*

After hearing appellant's testimony, ALJ Harap stated that:

> in [his] opinion the claimant has exaggerated the chronicity, intensity and frequency of his symptoms. In this regard, the Administrative Law Judge notes that the claimant has had no medical treatment since 1975. He has not undergone any active exercise or physical therapy program. He has not been admitted to a pain clinic. He is not taking prescription medication. Doctors who have examined the claimant have not described him as suffering from any significant distress. Further, although the claimant testified that he cannot sit or stand for more than ten minutes each, the description of his daily activities shows that he does sit for more than ten minutes at any one time.[13]

App. at 73 (footnote added). Accordingly, despite the appellant's subjective complaints of pain, the ALJ did not find the pain sufficient to prevent appellant from engaging in sedentary work. The district court upheld the ALJ's decision, noting the ALJ's "discretion to arrive at an independent judgment [regarding the credibility of a claimant's account of pain] in light of medical findings and other evidence regarding the true extent of the pain alleged by claimant." App. at 16 (citing *LaCorte v. Bowen,* 678 F.Supp. 80, 83 (D.N.J.1988)). Appellant argues that the ALJ failed to give due consideration to his subjective complaints of pain.

■ An ALJ must give serious consideration to a claimant's subjective complaints of pain, even where those complaints are not supported by objective evidence. *Ferguson v. Schweiker,* 765 F.2d 31, 37 (3d Cir.1985). "While there must be objective evidence of some condition that could reasonably produce pain, there need not be objective evidence of the pain itself." *Green,* 749 F.2d at 1071. Where medical evidence does support a claimant's complaints of pain, the complaints should then be given "great weight" and may not be disregarded unless there exists con-

trary medical evidence. *Carter,* 834 F.2d at 65; *Ferguson,* 765 F.2d at 37.

■ We do not quarrel with the ALJ's entitlement to draw an inference adverse to appellant from the fact that appellant has not sought medical assistance to relieve his professed pain. *See, e.g. Welch v. Heckler,* 808 F.2d 264, 270 (3d Cir.1986). However, the ALJ's treatment of appellant's complaints of pain cannot stand in light of our holding that the ALJ was not on sound ground in rejecting Dr. Hillsman's medical report. Had the ALJ given due consideration to Dr. Hillsman's medical report, the ALJ's analysis of the appellant's complaints of pain might have been significantly affected.

As noted above, the ALJ relied mainly on Dr. Bagner's medical report. By Dr. Bagner's report, appellant would not appear to be in great pain. For example, Dr. Bagner noted that the appellant sat comfortably during the interview, got on and off the examination table with little difficulty, and undressed and dressed himself.[14]

Dr. Hillsman's report, on the other hand, depicts a patient experiencing very substantial pain. Dr. Hillsman recorded that the various exercises during the course of the exam produced "lumbar hamstring pain," "severe lower abdominal pain," "ipsolateral right lower extremity pain," "contralateral thigh pain," and "diffuse lumbar, flank and gluteal pain." App. at 169–70. Indeed, when examined by Dr. Hillsman, appellant apparently suffered a spasm of such severity that Dr. Hillsman interrupted the examination for a period of time. *Id.* As part of her report, Dr. Hillsman recommended that appellant undergo a neuropsychiatric evaluation with respect to appellant's "chronic pain pattern." *Id.*

We faced a similar situation in *Carter v. Railroad Retirement Board.* There the Referee disregarded the claimant's subjective complaints of pain, finding that there was " 'no medical evidence of record describing a condition that could reasonably be expected to cause extensive and constant pain alleged by the appellant.' " 834 F.2d at 64. In reaching this conclusion, the Referee had, without explanation, dismissed the treating physician's medical evidence that the claimant was disabled from even part-time work. On appeal, we concluded that the treating physician's medical evidence should not have been ignored and described a condition that could reasonably be expected to cause pain. We noted that:

> [t]he Referee's disregard of [the treating physician's] conclusion not only minimized the weight given to the objective medical evidence, but also diminished the credibility of petitioner's subjective pain complaints.

*Carter,* 834 F.2d at 65.

Similarly, in this case, the ALJ cannot be assumed to have given appellant's subjective complaints of pain the substantial weight they are due—particularly since the complaints were deprived of the weight of substantiation by medical evidence. Furthermore, the medical evidence supporting appellant's complaints of pain obligated ALJ Harap to credit appellant's testimony unless there existed contrary medical evidence. *Carter,* 834 F.2d at 65. It was therefore improper for ALJ Harap to conclude that appellant "exaggerated the chronicity, intensity and frequency of his symptoms" without first indicating what medical evidence contradicted Dr. Hillsman's report.[15]

---

14. Dr. Bagner did observe, though, that the appellant experienced pain on the straight leg lift in both the lying down and seated positions. App. at 164.

15. The ALJ does state that "doctors who have examined the claimant have not described him as suffering from any significant distress." App. at 73. Since Dr. Hillsman did state that the appellant was in pain, the ALJ is apparently referring to the reports of Dr. Bagner and of the physician associated with the New Jersey Division of Vocational Rehabilitation. The medical form completed by the physician from the New Jersey Division of Vocational Rehabilitation is completely silent as to appellant's pain—neither noting discomfort or comfort. Nor does Dr. Bagner—whose remarks are noted above in the text—directly address appellant's complaints of pain, although he observes conduct that could imply that the appellant may not be in severe pain.

It would not seem appropriate to construe a physician's silence as to a patient's pain as an affirmative statement that the patient is not in pain. *Cf. Allen v. Bowen,* 881 F.2d 37, 41 (3d Cir.1989); *Kane v. Heckler,* 776 F.2d 1130, 1135

### III. *Conclusion*

Accordingly, the decision of the Secretary is vacated and the case remanded for further proceedings before the ALJ consistent with this opinion.

(3d Cir.1985). In *Allen,* this court refused to accept a physician's silence regarding a claimant's physical abilities as medical evidence that the claimant had no restrictions on the amount of weight he could lift. Similarly, in *Kane* this court found that an examining physician's silence as to how a claimant's impairment affected his work ability did not reflect the physician's conclusion that the claimant was not disabled.