Stephen R. **VENTURA**, Plaintiff,

v.

Donna E. **SHALALA**, Secretary of Health and Human Services, Defendant.

Civ. A. No. 94–111–JLL.

United States District Court,
D. Delaware.

Sept. 13, 1994.

Selma Hayman, Wilmington, DE, and Michael A. Comisky, Shawnee Mission, KS, of counsel, for plaintiff.

Gregory M. Sleet, U.S. Atty., and Nina A. Pala, Asst. U.S. Atty., Wilmington, DE, Charlotte Hardnet, Chief Counsel, and Timothy Strange, Asst. Regional Counsel, Dept. of Health and Human Services, Region III, Philadelphia, PA, of counsel, for defendant.

## MEMORANDUM OPINION

LATCHUM, Senior District Judge.

### I. Procedural History

This is an appeal from a denial of social security disability benefits by an Administrative Law Judge ("ALJ"). Steven Ventura, the plaintiff ("Ventura"), is a 50–year–old high school graduate, and prior to July 5, 1988, had worked as an insurance salesman for Mutual Benefit Life Insurance Co. Ventura applied for disability insurance benefits on June 30, 1989, alleging disability as of July 5, 1988, due to severe back complications. (Docket Item ["D.I."] 9, Ex. 1.) His insured status extended through December 1992. Ventura's disability application was denied initially and upon reconsideration. Ventura requested a review hearing before an ALJ.

Ventura's first scheduled hearing was on June 1, 1990. Due to the withdrawal of Ventura's attorney, Ventura requested and was granted a postponement. However, because the request for a postponement was received within 24 hours of the scheduled hearing, it appears that the medical and vocational experts were not notified of the postponement and appeared for the hearing. ALJ Richard A. Kelly, noting that the experts were to be paid for their appearances, had the experts answer some questions despite the absence of Ventura.[1]

Ventura appeared at the second scheduled hearing on August 3, 1990 unrepresented and was advised by the ALJ that it would be in his best interests to obtain representation. Ventura agreed and the hearing was postponed again.

When Ventura showed up at the third scheduled hearing on May 22, 1991, he was still unrepresented and was again warned that it was advisable to obtain counsel but decided nevertheless to proceed with the hearing without counsel. Neither a medical nor a vocational expert were present at this hearing. Ventura testified.

On November 27, 1991, the ALJ issued a decision denying benefits to Ventura.[2] Ventura timely appealed to the Appeals Council which on September 22, 1992, vacated the decision and remanded the case to the ALJ due to various evidentiary errors including the fact that the ALJ failed to allow Ventura the opportunity to cross-examine the medical and vocational experts that testified in the first hearing. (D.I. 9, Ex. 52.)

On remand, a fourth hearing was scheduled for February 23, 1993. At this hearing, again before ALJ Kelly, Ventura was represented by a non-attorney social security disability advocate, Charles Singleton. Ventura and Ventura's brother testified for Ventura. Both a medical and a vocational expert testified for the Government.

On August 26, 1993, the ALJ issued a second decision again denying Ventura disability benefits finding that while Ventura was unable to return to his prior work he was capable of performing "light work."[3] (D.I. 9 at 13–23.) Ventura again timely appealed to the Appeals Council which affirmed the ALJ's decision thereby rendering the decision the final judgment of the Secretary of Health and Human Services ("Secretary").

This action is an appeal from the ALJ's decision brought pursuant to section 205(g) of the Social Security Act, as amended, 42

1. The ALJ's first decision was vacated by the Appeals Council on this as well as other grounds.

2. The text of this decision does not appear in the record.

3. Light work is defined in the regulations as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b) (1993).

U.S.C. § 405(g) (1988), providing the District Court authority to review a final determination of the Secretary. The parties have filed cross-motions for summary judgment.

## II. Standard Of Review

■ This Court's review of the Secretary's factual findings is limited. If the Secretary's finding is supported by substantial evidence, the Court must uphold the finding. 42 U.S.C. § 405(g) (1988). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Dombrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir.1979); *Fisher v. Secretary of Health and Human Services,* 818 F.Supp. 88, 90 (D.Del.1993). The Court of Appeals for the Third Circuit has made clear that:

> [t]his oft-cited language is not, however, a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence ... or if it really constitutes not evidence but mere conclusion.... The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

*Kent v. Schweiker,* 710 F.2d 110, 114 (3d Cir.1983) (emphasis in original). *See also Brewster v. Heckler,* 786 F.2d 581, 584 (3d Cir.1986). A mere scintilla of evidence is insufficient but substantial evidence may be less than a preponderance. *Woody v. Secretary of Health and Human Services,* 859 F.2d 1156, 1159 (3d Cir.1988).

## III. Was The ALJ's Decision Denying Benefits Supported By Substantial Evidence?

In determining whether the ALJ's decision was supported by substantial evidence this Court must review the qualitative nature of the evidence in the record according to the standards followed in this Circuit. The significant evidence presented by both sides will be discussed in the paragraphs that follow.

In his memorandum of law in support of his motion for summary judgment, Ventura lists an array of excerpts from reports by various doctors indicating that Ventura does indeed have back complications. (D.I. 15.) Among these reports are findings by two doctors, one a medical doctor, Dr. Ross Ufberg, and one a chiropractor, Dr. Donald Feeney, indicating that Ventura is totally disabled due to significant back pain.

The Secretary's evidence consists of the testimony of a neurological specialist, Dr. Dewey Nelson, which states that Ventura's objective medical condition, while consistent with a certain amount of pain, simply does not support Ventura's alleged degree of disabling pain. In addition there is the testimony of the vocational expert which states that, given the conditions described by Dr. Nelson, Ventura has a residual functional capacity to perform "light work."

Ventura seeks summary judgment reversing the decision below or in the alternative a remand for a new hearing. Ventura seeks such a ruling on the following three grounds: (1) that the ALJ improperly incorporated evidence from the prior vacated decision; (2) that the ALJ's decision was not supported by substantial evidence and applied incorrect standards of law to evaluate the evidence; and (3) that the ALJ was biased against Ventura.

### A. The ALJ's incorporation of evidence from the vacated decision was improper.

■ The ALJ in issuing his first decision utilized evidence obtained from a medical and a vocational expert outside of the presence of Ventura and thereby prevented Ventura from having an opportunity to question or cross-examine the experts. For this reason, among others, the Appeals Council vacated the ALJ's decision and remanded the case. (D.I. 9, Ex. 52.) In issuing his second decision on August 26, 1993, the ALJ wrote

"[e]xcept as herein modified, the prior summary and evaluation of the evidence is hereby incorporated." (D.I. 9 at 16.) Such incorporation of the prior evidence was error as the prior decision was vacated and the case was remanded for a new hearing. This Court finds, however, that despite this error there remains substantial evidence to uphold the Secretary's findings based solely upon the evidence before the ALJ in the fourth hearing that was held upon remand.

*B. The ALJ's decision was supported by substantial evidence and applied the correct standards of law.*

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (1988). A physical or mental impairment constitutes a disability under the Act only if it is "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A) (1988).

A claimant may demonstrate that he is disabled in one of two ways. First, he can introduce evidence that his symptoms, signs, and laboratory findings match or surpass those of one or more of the serious impairments contained in the "Listing of Impairments," 20 C.F.R. Pt. 404, Subpt. P, App. 1 (1993), and that he is therefore disabled *per se. Id.* § 404.1520(d). Second, he can introduce evidence that even if he does not suffer from a "listed" impairment, his "residual functional capacity" resulting from his impairment prevents him from engaging in his past work or any other work. *Id.* § 404.1520(e), (f). The ALJ in this case has determined that Ventura does not suffer from a listed impairment and while the impairments that he does have are sufficient to prevent him from continuing in his prior work, they are not sufficient to prevent him from in engaging in other work within the category of "light work."

■ In general, pursuant to the "treating physician doctrine," a doctrine long-accepted in this circuit, an ALJ considering a claim for disability benefits must give significant weight to the findings of a treating physician. *Podedworny v. Harris,* 745 F.2d 210, 217 (3d Cir.1984); *Smith v. Califano,* 637 F.2d 968 (3d Cir.1981); *Roberts v. Shalala,* No. CIV.A. 93–5473, 1994 WL 285039, at *1 (E.D.Pa. June 21, 1994).[4] This doctrine is not intended to prevent the ALJ from giving little or no weight to the treating physician's findings if there is a history of conservative treatment that is inconsistent with the findings of disability or if the findings are merely conclusory. *Roberts,* 1994 WL 285039, at *1; *Fisher,* 818 F.Supp. at 91. In addition, this circuit has held that the Secretary is not bound by a treating physician's statement of disability and may reject it if there is contrary medical evidence. *Frankenfield v. Bowen,* 861 F.2d 405, 408 (3d Cir.1988). However, an ALJ "may not reject [a physician's findings] unless he first weighs them against other relevant evidence and explains why certain evidence has been accepted and why other evidence has been rejected." *Mason,* 994 F.2d at 1067 (quoting *Kent v. Schweiker,* 710 F.2d 110, 115 n. 5 (3d Cir. 1983)). Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ must make clear on the record his reasons for rejecting the opinion of the treating physician. *Brewster v. Heckler,* 786 F.2d 581, 585 (3d Cir.1986).

*i. Physical Impairment*

■ The ALJ stated in his decision that although Dr. Ufberg, Ventura's treating physician, found Ventura to be completely disabled, "he did not provide any clinical findings or medical evidence to support such

---

**4.** In *Mason v. Shalala,* 994 F.2d 1058 (3d Cir. 1993), the court stated that "a court considering a claim for disability benefits *must give greater weight* to the findings of a treating physician than to the findings of a physician who has examined the claimant only once or not at all." *Id.* at 1067 (emphasis added). However, this was merely dicta in the case and such an unconditional statement of the doctrine has never been the law in this circuit.

opinion of disability any [sic] findings that he may have made are minimal and such conclusion is therefore accorded little evidentiary weight." (D.I. 9 at 17.) Such a finding by the ALJ is supported by the record. A review of Dr. Ufberg's clinical notes reveal largely a recitation of Ventura's complaints as told to the doctor. While there are findings of reduced range of motion in the spine, the ALJ credited these findings by noting that Ventura did indeed have back strain. (D.I. 9 at 17.) In his testimony, Dr. Nelson stated that the findings attributable to the various MRIs, CAT scans, and X-rays of Ventura's spine, such as arthritic spurs, were no different than most people after 40 and did not support Ventura's allegations of disabling pain. In fact, the only objective sign of back problems beyond those common to most of the middle-aged population was in an EMG taken on May 6, 1992. Here there was for the first time a finding of radiculopathy.[5] (D.I. 9 at 169.) However, an MRI taken on May 7, 1992 showed no signs of neurocompression. (D.I. 9 at 169.) Dr. Nelson after reviewing all the objective evidence stated that in his opinion Ventura does not have a "significant back problem." (D.I. 9 at 170.)

█ With respect to Dr. Feeney's findings, Ventura's treating chiropractor, the ALJ noted that Dr. Feeney is a chiropractor and as such his findings and opinions do not constitute an acceptable medical source pursuant to the Social Security Act regulations but are merely other evidence which *"may also help...."* *See* 20 C.F.R. 404.1513(a), (e)(3) (1993) (emphasis added); *Fisher,* 818 F.Supp. at 91. *Accord Lee v. Sullivan,* 945 F.2d 687, 691 (4th Cir.1991). *But see Santiago v. Bowen,* 715 F.Supp. 614, 615–16 (S.D.N.Y.1989) (chiropractor's findings in the area of his specialty should be accorded the same weight as a treating physician). In accord with the regulations, and the applica-

ble case law, the ALJ was entitled to give less weight to the chiropractor's findings and opinions than he did to the medical doctor's.

The medical doctor testifying for the Secretary, Dr. Nelson, a neurological specialist, reviewed the objective medical evidence and concluded that Ventura is not suffering disabling pain from any objectively determinable cause. (D.I. 9 at 168–70.) The ALJ reasoned that in light of the minimal clinical findings made by Ventura's treating physician, and the contrary findings of the Secretary's medical expert, the treating physician's findings deserved little weight. The ALJ further noted that the Secretary's expert, Dr. Nelson, was a board-certified neurologist, and that his findings were consistent with the objective medical evidence. The ALJ's determination is further supported by the findings of Ventura's insurance company's examining physician, Dr. I. Favil Chavin, an orthopedic surgeon.[6] This Court finds that the ALJ therefore gave clear reasons for his acceptance of the opinion of the neurological specialist, as well as his rejection of the conclusions of the treating physician and the treating chiropractor, as is required by our case law.[7]

█ Ventura's inclusion of form reports with check boxes for the doctors to indicate Ventura's level of disability unaccompanied, as they were, by thorough written reports renders their reliability suspect. *See Brewster,* 786 F.2d at 585. Such form reports in the absence of sufficient clinical findings to support them cannot be given much weight and therefore the ALJ acted appropriately in accepting Dr. Nelson's testimony over these reports. *Mason,* 994 F.2d at 1065 (form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best). The ALJ therefore found, and had substantial evidence to find, that

---

**5.** Radiculopathy is defined as "disease of the nerve roots and nerve." Dorland's Illustrated Medical Dictionary (26th ed., 1981).

**6.** "Clinically it is to be noted that the organic findings do not match the subjective complaints. Even with positive x-ray findings, this does not substantiate abnormality to the degree that has

been demonstrated on a subjective basis." (D.I. 9 at 427) (dated March 30, 1989).

**7.** The plaintiff's allegations concerning the ALJ's failure to adhere to the proper legal standards therefore miscarry under the above analysis.

Ventura did not satisfy the applicable medical listing nor have the sufficiently reduced residual functional capacity necessary to qualify Ventura for social security disability benefits as a result of physical impairments.[8]

### ii. Mental Impairment

■ Ventura at his fourth hearing also presented testimony of his mental difficulties. The ALJ found that there was no sufficient mental impairment that would satisfy any of the applicable mental impairment listings, nor was there a sufficient reduction in residual functional capacity to qualify Ventura for benefits. Such a finding is supported by the evidence in the record.[9] When Dr. Adam Van Savage, a psychiatrist, interviewed Ventura on December 7, 1989, he found that Ventura was depressed and anxious and noted that these conditions interfered only to a moderate degree with Ventura's social interaction and his ability to sustain concentration. (D.I. 9 at 501–08.) Ventura only sought counseling for his alleged depression and anxiety on three occasions immediately preceding his hearing on February 23, 1993. (D.I. 9 at 615, 642.) Ventura presented himself with a depressed mood, but his mental status was reported as alert, oriented, relevant, and coherent. There is simply no evidence that Ventura suffers from a mental impairment sufficient to qualify for social security disability benefits. In evaluating mental impairments the ALJ must also complete a standard form, entitled a "Psychiatric Review Technique Form," 20 C.F.R. § 404.1520a(d) (1993), which is essentially a checklist that tracks the requirements of the Listings of Mental Disorders. *Id.* Pt. 404, Subpt. P, App. 1, § 12.00. Accordingly the ALJ, in filling out the Psychiatric Review Technique Form, recognized that Ventura suffered from some mental impairments

(dysthymia and a histrionic personality) but found, and had substantial evidence to find, that Ventura did not suffer to a sufficient degree from any mental impairments that met the listings. Nor was there any evidence of a reduced residual functional capacity and therefore Ventura was not entitled to social security disability benefits as a result of a mental impairment.

### C. The ALJ was not biased against the plaintiff.

■ Ventura has alleged that the ALJ was biased against the defendant and that the ALJ interfered with the social security advocate's cross-examination of the medical advisor. After a careful review of the record there is simply no evidence to support Ventura's allegations of bias or interference.

### IV. Conclusion

This Court finds that the ALJ had substantial evidence to hold that Ventura was not disabled within the meaning of the Social Security Act. Therefore, this Court will grant summary judgment in favor of the defendant affirming the decision below, and deny the plaintiff's cross-motion for summary judgment.

---

8. See the listings criteria set out in 20 C.F.R. Pt. 404, Subpt. P, App. 1, section 1.05 (1993).

9. Ventura argues that the Psychiatric Review Technique Form, (D.I. 9 at 21–23), is invalid because it lacks a signature. This form which was filled out by the ALJ merely demonstrates that the ALJ considered the evidence in evaluating Ventura's claim of mental impairment; as

such, it in no way served as a basis for the ALJ's decision but was rather a procedural form to demonstrate compliance with the Social Security Act regulations. In addition, the regulations appear to require the ALJ to append the form to the decision, as was done in this case, but do not require that he sign it. *See* 20 C.F.R. § 404.1520a(d)(1)(i), (2) (1993).