NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

_____

No. 10-1823
_____


BRAD A. NICHOLS,
                    Appellant
            v.

COMMISSIONER OF SOCIAL SECURITY


_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-09-cv-00839)
District Judge:  Honorable Nora B. Fischer
_____


Submitted Under Third Circuit LAR 34.1(a)
December 13, 2010


Before: SLOVITER, GREENAWAY, JR., and STAPLETON, Circuit Judges.

(Filed    December 15, 2010 )
_____

OPINION
_____

SLOVITER, *Circuit Judge*.

Appellant Brad Nichols appeals the denial of his claim for supplemental Social Security Income ("SSI").

I.

Nichols is a 26 year old man with a 12th grade education and a previous work history as a busboy and pantry worker. In July 2005, Nichols filed an application for SSI, alleging disability since 1995 due to Crohn's Disease, irritable bowel syndrome, allergies, asthma, hyperthyroidism and depression. Following a denial of the application, Nichols requested a hearing before an Administrative Law Judge ("ALJ").

At that hearing, Nichols testified he was diagnosed with Crohn's Disease at age eight or nine, and suffered from severe cramping, abdominal pain and body aches as a result of his condition. Nichols further stated that during his previous job he required four restroom breaks during the work day. Additionally, a vocational expert testified that a hypothetical individual of the same age, work history, and education, subject to specific environmental limitations and a sit/stand option, could not complete any of Nichols' past work, but identified other positions such an individual could complete. However, when asked if employment existed if that individual additionally required five restroom breaks per day, the vocational expert stated no work would be available.

The medical evidence included a Medical Statement Regarding Social Security Disability Claim completed by Dr. Andrew C. Fackler, M.D. Dr. Fackler indicated Nichols possessed no capacity to work, could stand or walk for no more than two hours per day, required a sit/stand option, suffered from severe fatigue at times, required

2

environmental restrictions related to his breathing problems, and could occasionally lift up to 50 pounds. Dr. Fackler also found Nichols suffered from severe pain and marked restrictions in his activities of daily living, marked difficulty engaging in social interactions, and deficiencies in his concentration. Dr. Fackler's treatment records indicated that Nichols had been treated for injuries sustained while lifting weights, grinding metal, and working with a hammer. In contrast, treatment records from Dr. Ram Chandra, a pediatric gastroenterologist who had periodically treated Nichols, indicated that Nichols had bowel movements once a day to once every other day and his symptoms were stabilized with the use of medication.

Dr. Joseph Altman, a psychologist, provided a narrative report and treatment notes. In his narrative, Dr. Altman stated that Nichols was unable to work due primarily to his physical problems, suffered from a Major Depressive Disorder and suffered a long history of anger management problems within the context of his family relationships. Dr. Altman specifically stated that Nichols' mental limitations were less significant than his physical limitations. Dr. Altman also noted that Nichols spent much of his time playing on the computer or watching television and had few social acquaintances.

Nichols was also examined by Dr. Anthony Goreczny, a psychologist, who reported that Nichols had marked impairments interacting with co-workers and supervisors, and responding to the pressures and changes in a work environment. Dr. Goreczny noted that Nichols was overly dependent on his parents and that Nichols' "acquiescence of responsibility would obviously not be acceptable or tolerated well in a

3

work environment." However, Dr. Goreczny also noted that Nichols related well to others in superficial interactions.

Nichols' records were reviewed by Dr. Roger Glover, a state agency psychologist, who determined that Nichols' claims were partially credible. Dr. Glover refused to give full weight to Dr. Goreczny's report due to its inconsistency with the total record, and Dr. Glover found the opinion in the report to be an overstatement of Nichols' functional limitations. Dr. Glover found that Nichols was able to meet the basic mental demands of work despite the limitations resulting from his impairment.

Following the hearing, the ALJ denied Nichols' application because his impairments did not meet the listing criteria, he possessed residual functional capacity ("RFC") to perform light work, and jobs that Nichols could perform in light of his age, education, work experience, and RFC existed in sufficient number. Nichols commenced a civil action seeking review of the Commissioner's denial of his SSI application. The District Court denied his motion for summary judgment and granted the Commissioner's motion for summary judgment. Nichols appeals.

## II.

Judicial review of a denial of SSI is limited to determining whether the decision to deny benefits was supported by substantial evidence. 42 U.S.C. § 405(g). When the ALJ's findings of fact are supported by substantial evidence, they are binding. *Knepp v. Apfel,* 204 F.3d 78, 83 (3d Cir. 2000). Substantial evidence requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988) (quotations omitted).

Nichols first claims the ALJ erred by improperly disregarding the medical opinions of his treating physicians. While the findings of a treating physician are generally to be given greater weight than those of a physician who has treated the claimant once or not at all, *see Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1997), an ALJ may discount the opinion of a treating physician when that opinion is inconsistent with other substantial evidence in the record, 20 C.F.R. § 416.927(d)(2).

In this case, the ALJ's decision not to credit Dr. Fackler's opinion as to Nichols' work capacity was supported by the inconsistency of that opinion with Dr. Fackler's own physical assessment and Nichols' treatment history. While Dr. Fackler concluded Nichols had no work capacity, his own assessment documented that Nichols was able to lift up to fifty pounds and possessed the ability to stand or walk without the assistance of any device. Additionally, Dr. Fackler's own notes document that Nichols engaged in activities such as weight lifting and metal grinding. The ALJ also noted that Dr. Fackler's findings regarding the severity of fatigue were inconsistent with Dr. Chandra's medical reports. Given the specific findings of the assessment and Nichols' ability to take part in some physical activities, the ALJ possessed substantial evidence to conclude Dr. Fackler had erroneously concluded that Nichols was unable to engage in any work.

Similarly, the ALJ's decision to provide less weight to the opinions of Dr. Altman and Dr. Goreczny was supported by the inconsistency between their opinions and the evidentiary record as a whole. While Dr. Goreczny found Nichols suffered from marked limitations in his ability to interact with co-workers and supervisors, and to respond to changes in the work setting, he noted that Nichols related fairly well during superficial

5

interactions. The ALJ noted that Nichols' social isolation was primarily attributed to his physical conditions and not the inability to behave appropriately. Further, Nichols' documented social problems were limited to his interactions within his family, and he was able to maintain social acquaintances and a relationship with a girlfriend. Given these inconsistencies, the ALJ possessed substantial evidence to credit Dr. Glover's opinion that Dr. Goreczny's conclusions overstated the severity of impairment suffered by Nichols.

In each case, the ALJ weighed the opinions against the evidentiary record as a whole and made a credibility determination that alternate medical evidence was due greater weight. Because an ALJ is not bound to follow a medical opinion simply because it is provided by a treating physician and substantial evidence existed to support providing less weight to each physician's opinion, we conclude that the ALJ's determination is persuasive.

Nichols has additionally argued that the ALJ erroneously determined Nichols suffered no mental impairment under the requirements of Listing 12.04 and erred in determining Nichols' RFC. Both of these arguments are premised entirely on the notion that the ALJ had to credit the determination of Nichols' treating physicians. However, Dr. Glover found no marked impairments of any of the part B functional areas of the listing. For the reasons stated above, the ALJ's decision to provide less weight to Dr. Altman's and Dr. Goreczny's opinions was supported by substantial evidence, as was the ALJ's determination of Nichols' RFC.

6

Nichols claims that the ALJ relied upon incomplete hypothetical questions to the vocational expert. A hypothetical posed to a vocational expert must account for all symptoms of a condition which cannot be remedied by treatment. *Podedworney v. Harris,* 745 F.2d 210, 218 (3d Cir. 1984). In *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005), this Court clarified that an ALJ may exclude from the hypothetical even those symptoms which are medically supported, if contradicted by other evidence in the record. In this framework, the hypothetical posed by the ALJ was appropriate and constituted substantial evidence of Nichols' RFC. Dr. Chandra's medical records stated that Nichols' symptoms responded to treatment and that his bowel movements occurred once a day to once every other day. While Nichols stated he had historically required four bathroom breaks a day, Dr. Chandra's records contradict his claim, and thus the ALJ was permitted to exclude the condition from the hypothetical and still rely upon the response as substantial evidence of Nichols' RFC.

Finally, Nichols argues that the ALJ's evaluation of his subjective complaints of pain was not supported by substantial evidence. Nichols contends that the ALJ made a credibility determination, which was based upon information regarding a life insurance policy which was not contained in the record. The ALJ noted that the record established Nichols was able to travel, play football, walk two miles a day, engage in off-road dirt biking, play video games, and use a computer. The ALJ relied upon Nichols' previous denials of many of the subjective symptoms when he was seen by Dr. Chandra. Even setting aside the ALJ's references to the life insurance policy, there was substantial evidence to support the ALJ's rejection of Nichols' subjective complaints.

7

## III.

For the reasons set forth, we will affirm the judgment of the District Court.