**Elaine PACHILIS, Plaintiff,**

v.

**Jo Anne BARNHART, Commissioner, Social Security Administration, Defendant.**

**No. CIV.A.01–3548.**

United States District Court, E.D. Pennsylvania.

May 30, 2003.

**476**

William C. Haynes, Law Offices of William C. Haynes, Lancaster, PA, for Elaine Pachilis, Plaintiff.

Nicholas Cerulli, Social Security Administration, Office of the General Counsel, Office of the General Counsel, Philadelphia, PA, for Jo Anne B. Barnhart, Respondent.

## MEMORANDUM

ROBRENO, District Judge.

This is an appeal from a final decision of the Commissioner of the Social Security Administration denying plaintiff Elaine Pachilis' claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Before the court are the parties' cross motions for summary judgment, a Report and Recommendation of the Magistrate Judge recommending that the court grant the defendant's motion and deny the plaintiff's motion, and plaintiff's objections to the Magistrate Judge's Report and Recommendation.

Pachilis has raised four purported objections,[1] namely that the Magistrate Judge erred in recommending that the ALJ's denial of benefits be affirmed because the ALJ (1) failed to assess the effect of the combination of plaintiff's impairments on her ability to function, (2) incorrectly dismissed plaintiff's testimony regarding constant pain, sleep disturbance, depression, and greatly reduced capacity for physical activity, (3) relied on pure and prejudicial speculation in making his determination of the plaintiff's credibility, and (4) failed to give appropriate weight to the opinion of Dr. Allen J. Togut, plaintiff's treating physician.

For the reasons that follow, the court will adopt the Report and Recommendation of the Magistrate Judge, and will grant defendant's motion for summary judgment. The court finds that there is

---

1. An examination of the four "objections" filed by the plaintiff in this case reveals that they are, *verbatim*, the same arguments presented to the Magistrate Judge, cut and pasted into a document that now purports to include "objections" to the Magistrate Judge's Report and Recommendation. Therefore, Pachilis' submissions to the court do not comply with the requirements of Local Rule 72.1(IV)(b) that objections specifically identify the portions of the *Report and Recommendation* to which objection is made.

Under Third Circuit precedent, a failure to comply with the Local Rules empowers the court "to impose a harsh result, such as dismissing a motion or an appeal, when a litigant fails to strictly comply with the terms of a local rule." *United States v. Eleven Vehicles, Their Equipment and Accessories*, 200 F.3d 203, 214 (3d Cir.2000). In order to avoid penalizing the plaintiff in this case for her counsel's conduct, however, the court will construe her objections as directed at the Magistrate Judge's determination that the ALJ's decision should be affirmed. *See id.* at 215 (holding "that a district court can depart from the strictures of its own local procedural rules where (1) it has a sound rationale for doing so, and (2) so doing does not unfairly prejudice a party who has relied on the local rule to his detriment").

substantial evidence to support the Commissioner's denial of benefits.

## I. DISCUSSION [2]

### A. *The Magistrate Judge Did Not Err in Concluding that the ALJ Evaluated Pachilis' Impairments in Combination.*

Under the relevant regulations and case law, an ALJ is required to "consider the combined effect of all [of a claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523; 20 C.F.R. § 416.923 (both stating that "the combined impact of the impairments will be considered throughout the disability determination process"); *see also Burnam v. Schweiker,* 682 F.2d 456, 458 (3d Cir.1982) ("The [ALJ] ... should have considered whether work existed for a person with the combination of impairments [that the claimant] possessed.").

██ An examination of the ALJ's decision reveals that the ALJ in fact considered Pachilis' impairments, i.e., cervical disc disease, depression and thoracic outlet syndrome, in combination as required by both the applicable regulations and the case law. The bulk of the opinion is devoted to recounting in great detail the chronology of the diagnoses of all of the plaintiff's various ailments, the limitations that resulted from them, and the treatments explored. Record at 9–14. That Pachilis' physical limitations appear more prominently in the ALJ's discussion is not evidence that the ALJ failed to take into account the effect of Pachilis' depression in combination with her physical symptoms.

Rather, this is so because the record contains far more evidence of physical than of mental limitation.

Even so, however, as revealed in the ALJ's questioning of the vocational expert in this case, the ALJ intended to develop and take into account evidence of the *combined* effect of Pachilis' impairments on her residual functioning capacity. The hypothetical posed to the vocational expert set forth both Pachilis' major physical limitations and the fact that she "cannot perform detailed and complex tasks," a mental or cognitive limitation. Record at 337. Therefore, the court concludes that the Magistrate Judge did not err in concluding that the ALJ had addressed plaintiff's impairments in combination, as required by regulation and relevant case law.

### B. The Magistrate Judge Did Not Err in Declining to Credit Pachilis' Allegations of Constant Pain, Sleep Disturbance, Depression, and Greatly Decreased Physical Capacity.

██ In determining the credibility of an individual's subjective complaints of pain and other symptoms, the ALJ must consider "the entire case record, including the objective medical evidence, the individual's own statements ..., statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." SSR 96–7p, 1996 WL 374186 (S.S.A. Jul. 2, 1996), at *1. In the course of this inquiry, however, "[the] ALJ must give serious consideration to a claimant's subjective complaints ..., even where those

**2.** The facts, procedural posture of this case, as well as the general framework under which applications for disability benefits are assessed and the applicable standard of review, are well known to the parties and will not be repeated here. The court adopts by reference the summary of the facts and legal principles contained in the Magistrate Judge's Report and Recommendation.

complaints are not supported by objective evidence." *Mason v. Shalala,* 994 F.2d 1058, 1067 (3d Cir.1993) (citing *Ferguson v. Schweiker,* 765 F.2d 31, 37 (3d Cir. 1985)); *see also* SSR 96–7p, 1996 WL 374186, at *1 ("An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his … ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.").

▆ The ALJ's decision reflects that the ALJ did not merely "disregard" Pachilis' allegations of constant pain, sleep disturbance, depression and a greatly reduced capacity for physical activity. Rather, summarizing the medical and other relevant evidence that ran contrary to her testimony, the ALJ set forth at length the reasons that Pachilis' claims with respect to these ailments were insufficient to entitle her to disability benefits:

> The undersigned notes that the claimant alleged depression. The record shows that she is receiving medication which has been prescribed by Dr. Togut, her current treating physician. There is no indication, however, that the claimant has ever been treated by a mental health provider … The record as a whole supports a finding that the claimant has a mild restriction of activities of daily living. She can take care of her own personal needs, except that she cannot dry her hair. She eats out or her husband cooks. Her family helps with the housework. She drives short distances. She does not have any difficulties maintaining social functioning. She sees her children at least once a week. After a separation, she is now back with her husband and they get along fine. She did not report any problems with the people with whom she had previously worked. Her sister drove her to the hearing. She has moderate difficulties in maintaining concentration, persistence or pace. She has difficulty sleeping because of the pain despite taking medication. She reported that the side effects of the medication make her slow.
>
> \* \* \* \* \* \*
>
> The claimant alleged constant pain, sleep disturbance, depression, and a greatly decrease[d] capacity for physical activity. However, the objective evidence of record does not provide a basis for her allegations. In a letter dated October 5, 1999 from the neurosurgeon, Dr. Close, it is noted that clinical findings including findings from a[n] MRI of the cervical spine fail to provide a basis for the claimant's symptoms. He ordered further studies which included vascular studies and electrical nerve studies. The results of these were all normal. The EMG showed no evidence of radiculopathy, entrapment, carpal tunnel syndrome, polyneuropathy or mononeuropathy. Furthermore the neurologist, Dr. Reed, noted that the physical examination was negative for findings of thoracic outlet, i.e., pulses and hand coloration. However he did say that it was possibly thoracic outlet syndrome. In a letter from Dr. Close to Dr. Reed, Dr. Close agreed that the claimant had thoracic outlet syndrome and referred her to physical therapy. On January 4, 2000 in a letter to the claimant's then family physician Dr. Hanna, Dr. Reed noted improvement as a result of the physical therapy, i.e., a 75 percent improvement of complaints and the physician seemingly noted that the only limitation was for the claimant not to overuse the arms. Further, Dr. Younan at the Berks Pain Center noted on February 24, 2000 that the claimant had full range of movement of the neck and reasonable range of movement of both shoulders and no sen-

sory or motor deficits. In addition the medical consultant to the Social Security Administration who reviewed the medical evidence noted on August 10, 2000 that, although lifting was limited, the claimant could carry out other household chores and that she was able to drive a car. He also indicated that the alleged need for significant limitations in her activities of daily living were not at all consistent with the sparse clinical and laboratory findings.

Record at 13–14. Even a cursory glance at this section of the ALJ's opinion reveals that he gave "serious consideration" to Pachilis' subjective complaints, as required under the case law. *See Mason,* 994 F.2d at 1067.

This portion of the ALJ's decision also makes clear that the primary reason that the ALJ did not fully credit Pachilis' testimony as to the severity of the impact of the pain, sleep disturbance, depression, and decreased capacity for physical activity that she experienced was the lack of substantiation for these complaints in the objective medical record. At the same time, however, for the reasons set forth below and contrary to what plaintiff now suggests, the ALJ did not rely solely on the objective medical evidence to cement his determination of Pachilis' credibility with respect to the above ailments and their alleged effect on her ability to perform in a work environment. As such, the court concludes that the ALJ made his decision in keeping with the requirements of SSR 96–7p and, therefore, on the basis of substantial evidence on the record.

**1.** *Allegations of constant pain, sleep disturbance, and great physical limitation*

In this case, Pachilis testified that she was in constant pain radiating that radiated from her neck into her hands, that was helped by pain medication, but aggravated by the use of her arms. Record at 320–21. She further testified during the hearing that her sleep was "not good," that she is unable to sleep straight through the night, and that this sleep disturbance is ameliorated somewhat through the use of appropriate medication. Record at 324.[3]

■ It is undisputed that pain may be disabling for purposes of eligibility for disability benefits. *See Smith v. Califano,* 637 F.2d 968, 972 (3d Cir.1981). As with any disabling condition, however, the key question before the ALJ is whether the claimant's pain is of a severity that prevents a claimant from performing either his past relevant work or jobs in the national economy that can accommodate the claimant's impairment. *See* 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.

■ Objective evidence of pain is not required; rather, there must be "objective evidence of some condition that could reasonably produce pain . . ." *Green v. Schweiker,* 749 F.2d 1066, 1071 (3d Cir. 1984); *accord* 20 C.F.R. § 404.1529, and "[w]here medical evidence does support a claimant's complaints of pain, the complaints should then be given 'great weight' and may not be disregarded unless there exists contrary medical evidence." *Mason,* 994 F.2d at 1067–68. At this point in the sequential evaluation process, the

**3.** Pachilis did not allege, and the medical record does not bear out, any sort of sleep disorder that might be responsible for her sleeping problems. From the exchange between Pachilis and counsel during the hearing, it appears from the exchange between Pachilis and counsel, who asked her a series of questions about specific activities that were limited by "[p]ain, fatigue or whatever," Record at 324, that Pachilis blamed pain for her sleeping problems. Therefore, the court will evaluate Pachilis' sleep disturbance as part and parcel of her claims of pain and resulting physical limitation.

claimant bears the burden of satisfying the factfinder that alleged pain is real and of disabling severity. *Bittel v. Richardson*, 441 F.2d 1193, 1195 (3d Cir.1971). For the reasons that follow, this is a burden that Pachilis has not sustained.

Most obviously, the medical evidence in the record conflicts with the proposition that thoracic outlet syndrome and cervical disc disease were responsible for pain of the severity and with the disabling effect reported by Pachilis. *See, e.g.*, Record at 111 (noting that Pachilis possibly had thoracic outlet syndrome, but that "[v]arious maneuvers for thoracic outlet syndrome were negative .... EMG's and nerve conductions of the upper extremities were normal. There was no evidence for radiculopathy, entrapments, carpal tunnel syndrome, polyneuropathy, or mononeuropathy."); Record at 131 (noting "full range of movement of the neck on flexion and extension ... a reasonable range of movement of both shoulders ... no sensory or motor deficits ... [but] some diffuse tenderness ...."); Record at 160 ("In short [after a review of the patient's MR scan], we do not have a reason for this woman's symptoms."); Record at 180 ("The limitations in ADL's are not at all consistent with the lack of clinical and laboratory findings.").

Even so, the ALJ did not disregard Pachilis' testimony as to her pain and degree of limitation. Rather, he weighed it and credited it in part. The ALJ concluded that Pachilis "has the residual functional capacity to perform work at the light level with lifting limited to the sedentery level, i.e., 10 pounds. The claimant can perform routine, repetitive tasks with no more than occasional use of her upper extremities and no above shoulder reaching." Record at 16. A de novo examination of the record reveals that this is a limitation supported in large part by Pa-

chilis' own testimony, Record at 322 (inability to hold grandchild); Record at 334–35 (inability to write for long periods of time and use of computer or typewriter limited to ten minutes with her left hand to twenty five minutes with her right before experiencing numbness), and medical evidence in the record. *See, e.g.*, Record at 110 ("She knows not to over use her arms."); Record at 158 ("I am impressed that her radial pulses are very difficult to obtain when we elevate her arms."); Record at 289 ("Her pulse was present but did disappear with varying positions. It was inconsistent."); Record at 290 ("The only abnormality I found on physical examination was a positive Adson's maneuver that was variable as to its response with Ms. Pachilis['] positioning of her arms."). Therefore, there was substantial evidence on the record to support the ALJ's determination that Pachilis' pain and physical limitations were not so severe as to be disabling within the meaning of the relevant statute.

### 2. *Depression*

 Plaintiff's argument with respect to the ALJ's treatment of her depression claim consists primarily of highlighting the ALJ's acknowledgment that depression constitutes a "severe impairment," and implying that this observation alone is dispositive of the disability inquiry. For the reasons that follow, the court concludes that this argument is without merit, and that there was substantial evidence on the record that justified the ALJ in his finding that Pachilis' depression generated only mild restrictions on her abilities.

First, as a matter of law, a finding that a claimant suffers from an impairment, even a severe one, does not end the inquiry. Rather, a claimant must still show that the impairment, as manifested in his particular circumstances, has resulted in sufficient

restrictions in his functional capacity that preclude him from working. *See* 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. Thus, noting Pachilis' claims of depression, the ALJ proceeded to evaluate her testimony as to the activities that she could still perform with an impairment classified as "severe." *See* Record at 9.

Second, as the ALJ concluded, the record contains no evidence of restrictions caused by Pachilis' depression. Bearing on the apparent severity of Pachilis' depression, for example, is the fact that, although Pachilis was being medicated for depression through her treating physician, she had never seen a mental health care provider for her condition. Record at 12, 323. Moreover, Pachilis was questioned during the hearing as to the extent and effect of her depression. Counsel stated, "[w]ell, depression can mean a lot of things. You say you're depressed. What does that mean?" Record at 322. Pachilis responded, "I'm very frustrated that I can't do anything. I just had a grandchild and I can't hold her." Record at 322. She did not state that the depression itself created any functional limitations for her, although the ALJ noted that she had "moderate difficulties in maintaining concentration, persistence or pace." Report at 12. Rather, as of the time of the hearing, Pachilis reported that she was seeing her family on a regular basis, effectively reconciling with her husband after a separation, taking care of all of her personal needs (save drying her own hair), driving short distances, going out to eat, and performing very light household chores. Record at 12, 324–26, 331, 333. Therefore, the court concludes that substantial evidence on the record supports the ALJ's decision not to credit basis for Pachilis' assertion that she suffered from a depression that was disabling, even in conjunction with her other ailments.

C. *The Magistrate Judge Did Not Err in Determining that the ALJ Did Not Engage in Pure and Prejudicial Speculation in Making His Determination of Plaintiff's Credibility.*

Plaintiff attacks the ALJ's assessment of her credibility on three bases. In particular, she alleges that (1) the ALJ erroneously dismissed her claims of drowsiness notwithstanding the fact that her physician indicated somnolence as a side effect of her pain medication, (2) decided her case under prohibited "sit and squirm jurisprudence," and (3) impermissibly speculated that plaintiff's motive for seeking disability was that she did not want to work. For the reasons that follow, the court concludes, addressing each claim seriatim below, that plaintiff's claims are without merit, and that the ALJ's decision to deny her benefits was supported by substantial evidence on the record.

1. *The ALJ's treatment of plaintiff's drowsiness*

Pachilis argues that the ALJ impermissibly discounted her claims of drowsiness as a side effect of her medication, notwithstanding the fact that her physician had acknowledged that the medication in question indeed induced somnolence. In particular, Pachilis states that "ALJ Burdock, illogically and without further evidence, determined that because the plaintiff testified to reading novels, her drowsiness problem could not be severe." Pl.'s Objections to the Report and Recommendation, at 3. Therefore, Pachilis contends, the Magistrate Judge's decision on this point was not supported by substantial evidence on the record. The court does not agree.

The primary reason that the ALJ discounted Pachilis' claims of drowsiness was that, at the time of her hearing, there

was no objective evidence that plaintiff's medication was responsible for her drowsiness. The ALJ wrote that "[r]elative to drug side effects the claimant indicated drowsiness, however, the record shows that the physician only indicated somnolence until the claimant gained tolerance to the drug she just started." Report at 13. Thus, the ALJ relied on a letter written by Dr. Close, the physician who prescribed the drug in question for Pachilis in 1999, two years before her hearing. At that time, Dr. Close described Pachilis only as "somewhat drowsy from Neurontin," and stated that "[b]ecause of her somnolence while she gains tolerance to the drug, I have kept her off work until [Dr. Reed] see[s] her again," Record at 158.

On the other hand, there is no objective evidence in the record to suggest that plaintiff would still be gaining tolerance to Neurontin and therefore suffering drowsiness two years after it was first prescribed. Moreover, as the Magistrate Judge noted, there is no evidence in the record that plaintiff's physicians ever discontinued the Neurontin or recommended naps to compensate for her drowsiness. In this context, it is clear to the court that speculation regarding Pachilis' professed ability to read books did not form the sole basis o the ALJ's decision to discount her claims of disabling drowsiness; rather, it was one factor bearing on Pachilis' credibility in light of the evidence contained in the record as a whole, which supports with substantial evidence the ALJ's determination the Pachilis' drowsiness was not as significant as alleged.

### 2. *Plaintiff's arm brace*

Pachilis next argues that the ALJ, "in what closely resembles 'sit and squirm' jurisprudence," impermissibly determined, based on his observations of plaintiff applying her arm brace before the hearing,

that Pachilis was not credible with respect to the alleged extent of her limitations. The ALJ wrote as follows:

The claimant also testified that Dr. Togut prescribed an arm support in May 2000 when she first saw him and that she uses it every day. She stated that it was for arm support when she sat or stood too long. The undersigned observed the claimant prior to the hearing putting the support on in the waiting room. She exhibited some difficulty in putting it on which would suggest that the claimant has not used it that much. Also putting it on just prior to the hearing suggests that the claimant attempted to present herself as more limited than she is.

Record at 13–14. For the reasons that follow, the court concludes that the Magistrate Judge's observations constitute substantial evidence on the record supporting his determination of Pachilis' credibility.

■■■■■ It is true that the Third Circuit "has ... refused to permit an ALJ's lay observation that a claimant appears healthy to constitute substantial evidence supporting the ALJ's ultimate finding of physical nondisability." *Kelly v. R.R. Ret. Bd.*, 625 F.2d 486, 494 (3d Cir.1980). Prohibited "sit and squirm" jurisprudence occurs when "an ALJ who is not a medical expert will subjectively arrive at an index of traits which he expects the claimant to manifest at the hearing. If the claimant falls short of the index, the claim is denied." *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir.1982). By contrast, however, "an ALJ may consider his own observations of the claimant and [the court] may not second-guess the ALJ's credibility judgments ...." *Morales v. Apfel*, 225 F.3d 310, 318 (3d Cir.2000).

■■■■ In this case, the ALJ's narrative with respect to his pre-hearing observations of the plaintiff is primarily directed

at the credibility of Pachilis' own account of her need for an arm brace and of the severity of her condition. In any event, however, although the ALJ also used his observations of Pachilis as one nondispositive factor bearing on his decision to reject the opinion of plaintiff's treating physician, Dr. Togut, *see* Record at 13, as discussed in detail below, *see infra* Part I.D., the overwhelming majority of medical evidence in this case also contradicted Dr. Togut's assessment of Pachilis' disability, and formed the basis for a determination that Dr. Togut's purported findings should not be accorded substantial weight. Therefore, the ALJ's reliance on his own observations did not constitute sit and squirm jurisprudence prohibited in the Third Circuit, and instead constitutes substantial evidence of Pachilis' credibility.

### 3. *Motive for applying for disability benefits*

■ Pachilis next alleges that the ALJ's decision was based on impermissible speculation to the extent that he stated that she "was recently awarded disability retirement benefits from the State and … has filed a workmen's compensation claim against the State. As such, there is little economic incentive for this claimant to work." Record at 14. A review of the case law indicates that a claimant's incentive or disincentive to work is a permissible criterion bearing on his credibility. *See Gaddis v. Chater*, 76 F.3d 893, 896 (8th Cir.1996) ("We agree with the ALJ that there is a 'strong element of secondary gain in this case' and that [the claimant's] conduct believes his sincere belief that he is truly disabled and unable to perform any substantial gainful activity."). Accordingly, the court concludes that Pachilis' access collateral sources of income constitutes substantial evidence on the record bearing on her credibility.

### D. *The Magistrate Judge Did Not Err in Approving the ALJ's Determination Not to Accord Plaintiff's Treating Physician's Report Great Weight.*

■ The Third Circuit has acknowledged that "[u]nder applicable regulations and the law of this Court, opinions of a claimant's treating physician are entitled to substantial and at times even controlling weight." *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir.2001) (citing 20 C.F.R. § 404.1527(d)(2)). However, "a statement by a plaintiff's treating physician supporting an assertion that she is 'disabled' or 'unable to work' is not dispositive of the issue." *Adorno v. Shalala*, 40 F.3d 43, 47–48 (3d Cir.1994). Rather, "[t]he ALJ must review all the medical findings and other evidence presented in support of the attending physician's opinion of total disability," *id.* at 48, and "must weigh the relative worth of a treating physician's report against the reports submitted by other physicians who have examined the claimant." *Id.* According to 20 C.F.R. § 404.1527, the medical opinion of a claimant's treating physician is given controlling weight on the issue of the nature and severity of a claimant's impairments if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record …." 20 C.F.R. § 404.1527(d)(2).

■ The ALJ set forth at length his reasoning for declining to accord great weight to the determination of plaintiff's treating physician, Dr. Togut:

The claimant also underwent an examination by an independent medical examiner … As expected, Dr. Togut disagrees with Dr. Holm's opinion and asserts that there are objective findings to support his opinion that claim-

ant is totally disabled. However, when considered against the balance of the record including the results of diagnostic testing, the credibility factors noted which raise questions as to the degree of claimant's symptoms and the reports of various physicians including the independent medical examiner, the undersigned rejects Dr. Togut's findings.

\* \* \* \* \* \*

The undersigned notes ... that there are minimal objective findings, from either diagnostic testing-MRI, EMG/NCS, upper extremity arterial or the physical examinations conducted by various physicians, Drs. Close, Reed, Younan and Holm as well as a medical consultant's report from his review of the evidence, to support the claimant's allegation that she is disabled for any substantial gainful activity. As such, the evidence simply does not support Dr. Togut's opinion that the claimant is totally disabled from performing any gainful employment. The record shows that the claimant sought out this physician-learned of him from a friend-without a referral and 3 days after Dr. Togut examined the plaintiff he certified her as being disabled, which raises the question as to whether she sought him out for a disability certification rather than treatment.

Record at 13–14. In light of the fact that, of all the physicians to examine Pachilis, Dr. Togut alone suggested that she was totally disabled, such that his opinion was contradicted by the other medical evidence of record, including the reports of other doctors and the results of clinical testing, *see, e.g.,* Record at 111, 131, 160, 180, 290; *see also* discussion, *supra* Part I.B.1, the court concludes that the Magistrate Judge did not err in finding that the ALJ's decision to discount Dr. Togut's opinion was

supported by substantial evidence on the record.

## II. CONCLUSION

For the foregoing reasons, the court adopts and approves the Report and Recommendation of Magistrate Judge Wells. Summary judgment is granted in favor of defendant, Commissioner of Social Security, and against plaintiff, Elaine Pachilis.

An appropriate order follows.

### ORDER

AND NOW, this 30th day of May, 2003, upon consideration of the pleadings and the record herein, and after review of the Report and Recommendation of United States Magistrate Judge Carol Sandra Moore Wells, and plaintiff's objections, it is hereby **ORDERED** that:

1. The Report and Recommendation is **APPROVED** and **ADOPTED**.

2. The plaintiff's motion for summary judgment (doc. no. 8) is **DENIED**.

3. The defendant's motion for summary judgment (doc. no. 9) is **GRANTED**.

**AND IT IS SO ORDERED.**