NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 11-2451
_____

CASSANDRA GROGAN,
                                        Appellant,

v.

COMMISSIONER OF SOCIAL SECURITY

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 10-cv-3162)
District Judge:  Hon. John R. Padova

_____

Submitted Under Third Circuit LAR 34.1(a)
January 13, 2012

Before:  McKEE, *Chief Judge*, FUENTES, and JORDAN, *Circuit Judges*.

(Filed: January 23, 2012)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

        Cassandra Grogan appeals from an order of the United States District Court for the

Eastern District of Pennsylvania affirming the decision of an Administrative Law Judge

("ALJ") to deny Grogan's claims for disability insurance benefits and supplemental

security income.  For the following reasons, we will affirm.

## I. Background

### A. Facts

#### 1. Relevant Vocational and Functional Background

Grogan is a forty-one year old female who was thirty-six at the time she alleged disability in this case. From 1998 to April 2001, Grogan worked as a Certified Nurse's Assistant, and, in 2006, an ALJ granted her disability status for a closed period beginning April 30, 2001 and ending August 1, 2005.[1] After her disability period ended, Grogan worked for a debt collection bureau, making phone calls and doing data entry until October 2006, when she stopped working because of her alleged current disability. Her impairments involve pain, back abnormalities, IBS, anxiety, depression, bipolar disorder, and post-traumatic stress disorder ("PTSD").

#### 2. Physical Health Treatment

Grogan's medical records include a history of back and gastrointestinal ("GI") problems.[2] Several magnetic resonance imaging ("MRI") scans show that Grogan suffers from a back abnormality. In June 2005, Grogan's pain management specialist, Dr. Thomas Zavitsanos, prescribed a series of steroid injections to alleviate pain Grogan

---

[1] Grogan's prior claims stemmed from degenerative disc disease, irritable bowel syndrome ("IBS"), and depressive disorder.

[2] Grogan's treatment records for her IBS are limited. In March 2004, Grogan saw a gastroenterologist, Dr. Mark Tanker. Tanker observed that Grogan had been diagnosed with IBS in the past but had had no GI evaluation for six or seven years. Tanker prescribed Bentyl and Zantac and recommended that Grogan increase her fiber intake. During the period at issue, Grogan made numerous GI complaints to her treating physicians. She also visited Dr. Alexander Harmatz, a GI specialist, on or prior to October 30, 2007. Although both Tanker and Harmatz ordered laboratory tests, the results of those tests are not in the record.

2

complained of having in her back. Grogan reported significant, but not complete, pain reduction. She did not return to see Zavitsanos until July 2007.

In the interim, she was attended by her primary care physician, Dr. Gerald Skobinsky. Skobinsky's care from March 2006 to July 2007 involved general treatment for earaches and cold symptoms, as well as prescriptions for pain and GI medications. Upon Grogan's return visit to Zavitsanos on July 23, 2007, Zavitsanos reported no changes and again recommended a series of steroid injections. Grogan acknowledged "definite but transient improvement" in pain after receiving her first injection (App. 2 at 322),[3] and "60% to 70% pain relief for 6 to 8 weeks" after her second injection, (App. 2 at 399).

In March 2008, Zavitsanos reported no change in reflexes but noted a diminished capacity for physical sensation. He recommended that Grogan consult a neurosurgeon, which she had failed to do upon his earlier suggestion because she had "a lot of things going on" and was dealing with household issues. (App. 2 at 399.) An MRI in April 2008 showed no changes from prior tests.

### 3.    Mental Health Treatment

On June 25, 2007, Grogan underwent an evaluation with her treating psychiatrist, Dr. Polina Stolyarova, who diagnosed Grogan with major depression and PTSD. Stolyarova gave Grogan a global assessment of functioning ("GAF") score of 60, indicating moderate difficulty functioning. Stolyarova's treatment notes indicate continued depression and anger issues, but also indicate appropriate appearance,

---

[3] "App. 2" refers to appendix volume 2 of the record.

cooperative behavior, intact thought processes, and no suicidal plans or ideations. Stolyarova also noted improvement during this period.

On May 13, 2008, Grogan underwent a second yearly evaluation with Stolyarova, who diagnosed Grogan with bipolar disorder but noted that Grogan was responding well to medication. Stolyarova assigned Grogan a GAF score of 62, indicating more mild symptoms.

On October 2, 2008, Grogan was involuntarily committed to a hospital for approximately one week after she took an overdose of her medication in a reported suicide attempt. Upon hospital intake, Grogan was assigned a GAF score of 20, indicating some danger of hurting herself.

Grogan returned to treatment in January 2009 with a new psychiatrist Dr. E. Karzova, who reported that, although Grogan was depressed, she was attentive and did not exhibit any suicidal plans or ideations. Grogan declared that she felt a 60 percent improvement with medication. Karzova recommended continued psychotherapy and assigned Grogan a GAF score of 65, indicating improvement. In February 2009, Grogan reported "feeling a little better," and Karzova noted a "slight improvement." (Tr. at 448.)[4]

### 4. Opinion Evidence

Several medical opinions regarding Grogan's ability to function were submitted in connection with her application for benefits. First, Skobinsky submitted a medical source statement in which he checked boxes indicating that Grogan could occasionally carry two

---

[4] "Tr." refers to the transcript of administrative proceedings in this case.

to three pounds, stand or walk for no more than one hour per eight-hour workday, and sit for no more than one hour per eight-hour workday.

Grogan also submitted a letter dated March 20, 2007 from Stolyarova stating that Grogan was "not capable of completing complicated forms and require[d] assistance with complex tasks." (App. 2 at 199.) Stolyarova also completed a source statement on January 31, 2008, reporting that Grogan's impairment affected her ability to understand, remember, and carry out instructions, and her ability to respond to supervision, co-workers, and work pressures. Stolyarova concluded that Grogan suffered from "an unstable mental condition," "poor anger management, increased anxiety[,] and unstable mood." (App. 2 at 364.)

In December 2007, Dr. Paul Taren, a state agency psychologist, reviewed Grogan's medical records and concluded that she suffered from major depressive disorder and PTSD. Taren found that Grogan had moderate limitations in the ability to understand, remember, and carry out detailed instructions, maintain concentration, persistence, or pace, and respond appropriately to changes in work settings.

Dr. Gerald Gryczko, a state agency physician who reviewed Grogan's medical records, concluded that Grogan suffered from a back abnormality and IBS, but found that she could lift or carry ten to twenty pounds and stand or walk about six hours in an eight-hour workday.

### B. Procedural History

On August 29, 2007 and September 4, 2007, respectively, Grogan filed a Title II application for disability insurance benefits and a Title XVI application for supplemental

5

security income, alleging disability beginning October 15, 2006. Those claims were denied, and, upon Grogan's request, a hearing was held before an ALJ on May 12, 2009, at which Grogan and a vocational expert testified.

Grogan testified that, because of her back impairment, she needs assistance with, or cannot do, several household activities. However, she reported that she could make coffee, prepare simple meals, do light cleaning, pay bills, and feed her pet cat. Additionally, she testified that her IBS affects her every day, and she only eats once a day after she "gets [her] bowels in control." (App. 2 at 45.)

The vocational expert testified that a person of the same age, education, and past work history as Grogan, who was capable of performing sedentary work that affords the opportunity to sit or stand and is routine and simple, could not perform Grogan's past work. The expert went on to say, however, that jobs exist in the national economy, including clerical positions and sedentary, unskilled work for packers and assemblers, that such a person could perform.

On May 29, 2009, The ALJ ruled that Grogan was not disabled. The ALJ determined that Grogan suffered from severe impairments but that none of them required an automatic determination of disability, *see* 20 C.F.R. § 404.1520(d). The ALJ next concluded that Grogan could not return to her past work but that she had the residual functional capacity[5] to perform sedentary work that affords the opportunity to sit or stand, involves no detailed instructions, and requires few work changes.

_____

[5] "Residual functional capacity" is "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).

6

In determining that Grogan could perform sedentary work, the ALJ attributed "little weight" to the highly restrictive opinions of Skobinsky. (App. 2 at 19.) The ALJ reasoned that Skobinsky's assessment was

> not supported by the doctor's own records or by the records of other treating physicians such as Dr. Zavitsanos who saw the claimant from 2003 to 2008. Such records … do not relate motor power or reflex deficits, persistent positive straight leg raising, significantly limited spinal or extremity range of motion, significant gait dysfunction other than on examination that was suspect for exaggerated pain behavior … .

(*Id*.) The ALJ also gave "little weight" to Stolyarova's mental health assessment, reasoning that the record "shows [Grogan had] mental health symptoms but overall does not indicate symptoms of a level commensurate with [Stolyarova's assessment]." (App. 2 at 20.)

On April 22, 2010, the Appeals Council denied Grogan's request for review, making the ALJ's decision final. Grogan then filed a complaint in District Court, alleging that the denial of her claims was not supported by substantial evidence. On February 23, 2011, Magistrate Judge Hart issued a Report and Recommendation suggesting that Grogan's request for review be denied, and, on April 2, 2011, the District Court entered an order denying Grogan's request for review and granting summary judgment for the Commissioner. This timely appeal followed.

7

## II.    Discussion[6]

Grogan argues that the District Court erred in upholding the ALJ's decision to give limited weight to Grogan's treating physicians' opinions in the course of deciding that Grogan was capable of sedentary work. She argues that had those opinions been appropriately credited, they would have supported a decision in her favor. We disagree and conclude that substantial evidence supports the ALJ's decision.

### A.    Applicable Law

To prove disability, a claimant must demonstrate that she suffers from some "medically determinable physical or mental impairment" that prevents her from "engage[ing] in any substantial gainful activity" for a period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); *Morales v. Apfel*, 225 F.3d 310, 315-16 (3d Cir. 2000). A claimant will be considered disabled and receive benefits only if

> the claimant demonstrates that (1) [s]he is not currently engaged in any substantial gainful activity; (2) [s]he is severely impaired; and either (3) [her] impairment is listed in 20 C.F.R. pt. 404, subpt. P, App. 1, in which case [s]he is presumptively disabled, or (4) [her] impairment prevents [her] from meeting the physical and mental demands of the kind of job that [s]he

---

[6] The District Court had jurisdiction pursuant to 42 U.S.C. § 405(g). We have jurisdiction pursuant to 28 U.S.C. § 1291. Our review of the District Court's order for summary judgment is plenary; however, "our review of the ALJ's decision is more deferential as we determine whether there is substantial evidence to support the decision of the Commissioner." *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (internal quotation marks and citation omitted). "Despite the deference to administrative decisions implied by [the substantial evidence] standard, appellate courts retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner's] decision is not supported by substantial evidence." *Smith v. Califano*, 637 F.2d 968, 971 (3d Cir. 1981) (citations omitted).

has held in the past, and (5) [her] impairment together with [her] age, education, and past work experience also prevents [her] from doing any other sort of work.

*Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991) (citing 20 C.F.R. § 404.1520). "A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Morales*, 225 F.3d at 317 (quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, "[t]he law is clear … that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." *Brown v. Astrue*, 649 F.3d 193, 197 n.2 (3d Cir. 2011). A treating physician's opinion on the nature and severity of a claimant's impairment is only given controlling weight when it is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the [claimant's] case record.'" *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001) (alteration in original) (quoting 20 C.F.R. § 404.1527(d)(2)).

When a treating physician's opinion "conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" *Morales*, 225 F.3d at 317 (quoting *Plummer*, 186 F.3d at 429)); *see Fargnoli*, 247 F.3d at 43 (when an ALJ "weigh[s] the credibility of the evidence, he must give some indication of the evidence that he rejects and his reason(s) for discounting that evidence.").

9

B.    *Treating Physician's Opinion*

1.    *Back Impairment*

As to her back impairment, Grogan argues that the ALJ improperly rejected Dr. Skobinsky's conclusion that she could lift or carry only two to three pounds, cumulatively stand or walk for no more than one hour per eight-hour workday, and sit for no more than one hour per eight-hour workday. That report, if taken at face value, would be work-preclusive. The ALJ concluded, however, that Grogan's back impairment is not so severe as to entirely preclude her from engaging in any gainful activity, and that Skobinsky's opinion was "not supported by the doctor's own records or by the records of other treating physicians." (App. 2 at 19.) We agree with the District Court that the ALJ's determination was supported by substantial evidence.

First, Skobinsky's treatment records for Grogan indicate general care for cold symptoms and administering prescriptions. The ALJ reasonably concluded that those records do not support Skobinsky's highly restrictive opinion, as they do not correlate to any impairment affecting Grogan's motor power, reflexes, positive straight leg raising, significant limitations on range of motion, or gait dysfunction – all of which are relevant to her ability to perform sedentary work. Moreover, although we have stated that an ALJ "may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence,"

10

*Morales*, 225 F.3d at 317 (internal quotation marks and citations omitted), the record does contain medical evidence contrary to Skobinsky's opinion.[7]

Indeed, Skobinsky's opinion is inconsistent with the notes from Dr. Zavitsanos's treatment of Grogan, which indicate that Grogan's pain had, at least temporarily, been aided by steroid injections. Zavitsanos also reported that Grogan's sensorimotor abilities and reflexes remained unchanged, though she had diminished capacity for physical sensation. Those findings undermine Skobinsky's opinion that Grogan was essentially unable to work. In addition, Zavitsanos's reports of no changes in motor or deep tendon reflexes further support the ALJ's conclusion that the medical records "do not relate [to] motor power or reflex deficits." (App. 2 at 19.)

Skobinsky's opinion also conflicts with that of Dr. Gryczko, the state agency physician who concluded that Grogan was capable of limited work including lifting or carrying twenty to twenty-five pounds and standing or walking about six hours in an eight-hour workday. Skobinsky's opinion also is contrary to the evidence of Grogan's abilities and lifestyle. The ALJ observed that, by Grogan's own account, she was able to perform numerous activities such as making simple meals, caring for her children, paying bills, and light cleaning. The ALJ also noted that most medical evaluators reported that Grogan maintained proper self-care and grooming. Grogan's ability to perform so many

---

[7] It is also noteworthy that the forms that Skobinsky filled out consisted largely of simply checking boxes. We have previously found the credibility of this type of opinion evidence to be suspect. *See Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."). Additionally, Skobinsky's notations and explanations for his entries consist largely of merely "see above" and "included." (*See* App. 2 at 366-67.)

daily functions involving reasonable motor function supports the ALJ's conclusion that Grogan was capable of sedentary work.[8] Thus, we conclude that substantial evidence supports the ALJ's decision to give diminished weight to Skobinsky's opinion.

2. *Gastrointestinal Impairment*

Grogan also contends that the ALJ failed to give proper consideration to her GI symptoms. She is correct that her complaints of persistent diarrhea are well-supported in the record. However, the ALJ's conclusion that Grogan's IBS was largely under control is nonetheless supported by substantial evidence.

Grogan saw a gastroenterologist, Dr. Tanker, who prescribed medication and recommended that she increase her fiber intake in March 2004, and she saw another gastroenterologist, Dr. Harmatz, on one occasion in 2007.[9] Grogan made numerous reports to her treating physicians and in her testimony about intestinal problems, but there is no evidence in the medical record that her condition was not helped by her medications or that it was so severe as to preclude her from working. The severity of Grogan's IBS is shown only through her own testimony and complaints. A state physician reviewed the records with respect to Grogan's IBS and determined that her condition was not so severe as to be work-preclusive.

---

[8] Also, despite Grogan's continuing complaints of severe pain, she testified at her hearing that she was not receiving any treatment for her back other than pain medication at the time. Additionally, despite her alleged pain profile, Grogan "ke[pt] forgetting to find a pain specialist." (App. 2 at 384.) The ALJ reasonably noted that "if [Grogan's] back pain was of the level testified to at hearing by [Grogan], it does not seem reasonable that she would have gone over a year without obtaining a new pain management specialist." (App. 2 at 18.)

[9] Although both specialists ordered laboratory tests done, the results of those tests do not appear in the record.

In light of the foregoing, we are satisfied that substantial evidence supports the ALJ's conclusion that Grogan's IBS did not prevent her from being able to work.

### C. Treating Psychiatrist's Opinion

Grogan argues that substantial evidence did not support the ALJ's decision to give diminished weight to the opinion of Dr. Stolyarvoa, Grogan's treating psychiatrist. Stolyarova's opinion evidence consisted of a letter and source statement indicating moderate, severe, and extreme limitations in Grogan's mental capacity. Based on the record, the ALJ's decision to give diminished weight to Stolyarova's restrictive opinion is supportable.

First, Stolyarova's opinion is inconsistent with her own treatment of Grogan. Although Stolyarova diagnosed Grogan with major depression, PTSD, and bipolar disorder, Stolyarova's yearly evaluations consistently rated Grogan's symptoms as mild to moderate, reflected in her GAF scores of 60 and higher. Stolyarova's records also indicate that Grogan typically showed intact thought processes and cooperative behavior, was goal-directed, and maintained appropriate grooming and appearance.

Stolyarova's opinion is also inconsistent with Dr. Karzova's treatment records, which showed significant improvement in Grogan's mental condition. Indeed, in 2009, Karzova assigned Grogan a GAF score of 65, indicating more mild symptoms and representing the highest score assigned to Grogan during the period at issue. Additionally, Grogan reported to Karzova that she felt a "60% improvement" with medication, (App. 2 at 432,) and Karzova observed a "slight improvement" in Grogan's condition, (Tr. at 448). Therefore, Karzova's treatment of Grogan reasonably

13

demonstrates a relatively mild and improving condition, inconsistent with Stolyarova's restrictive assessment.

Stolyarova's opinion is also contradicted by the opinion of the state agency psychologist, Dr. Taren.[10] Taren concluded that Grogan had no significant limitations other than moderate limitations in her ability to understand, remember, and carry out detailed instructions, to maintain concentration, persistence, or pace, and to respond appropriately to changes in work setting.

Based on the evidence indicating that Stolyarova's restrictive opinion was inconsistent with her own treatment records and with the opinions of other mental health professionals, there was an adequate basis for the ALJ to decide to give diminished weight to Stolyarova's opinion.

## III.    Conclusion

For the foregoing reasons, we conclude that substantial evidence supports the ALJ's decision.  Accordingly, we will affirm the District Court's judgment.

---

[10] As the District Court recognized, Taren's report was made prior to Grogan's attempted suicide and involuntary hospital stay.  That is significant; however, it should be noted that the ALJ gave Taren's opinion "some weight but not substantive weight" and gave Grogan "the benefit of the doubt" by giving her a "slightly more restrictive residual functional capacity."  (App. 2 at 21.)

14