NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2764
_____

DOUGLAS A. GROSS,
                                    Appellant

v.

COMMISSIONER SOCIAL SECURITY

_____

On Appeal from the District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 3-14-cv-01946)
District Judge: Honorable Richard P. Conaboy
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 4, 2016

Before: JORDAN, GREENBERG, and SCIRICA, Circuit Judges

(Filed: June 30, 2016)

_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**SCIRICA**, *Circuit Judge*

Douglas Gross appeals from the District Court's order affirming the decision of an Administrative Law Judge to deny Gross's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act, 42 U.S.C. §§ 401 *et. seq.* and 1381-1383f. We will vacate the District Court's order and remand the case with instruction to return it to the Commissioner for further proceedings consistent with this opinion.

## I.

Douglas Gross resigned from his job as a taxi driver[1] because chronic severe groin pain and a lack of concentration threatened his ability to drive safely. Gross reported to Alley Medical Center and Berwick Hospital in April 2008 with headaches and testicular pain. He was diagnosed with large varicocele bilaterally and mild hydrocele bilaterally, conditions which affect the male genitals. He rated the pain in his testicles as a nine on a scale of one to ten.

Gross was discharged with prescriptions for Cipro and Percocet, but he returned a few months later for surgery to address his bilateral varicoceles. Despite the surgery, he continued to feel pain, and an ultrasound in January 2009 showed the continued presence of bilateral varicoceles. Over the next two years, Gross received treatment for various conditions, including an epididymal cyst in his testicles, varicose veins, and pancreatitis. His severe testicular pain recurred around 2010.

In May 2011, Gross reported to the emergency room of CMC-Geisinger Medical

---

[1] He previously worked other jobs as a cashier, a cook, a driver, a janitor, and a welder.

2

Center with complaints of severe testicular pain radiating into his abdomen. An ultrasound showed the presence of bilateral varicoceles, left hydrocele, and right scrotal wall thickening. He was told to visit his urologist, but he reported to the emergency room again two days later where he was evaluated for severe groin pain. He grappled with severe pain for most of 2011.

Gross was evaluated at Geisinger by Dr. Hottenstein as a new patient in June 2012. At Dr. Hottenstein's recommendation, Gross underwent an ultrasound of his genitals, which showed the continued presence of varicocele and hydrocele. He was instructed to return for a follow up in a few months. In the interim, he underwent an evaluation by Dr. Simmons, who practices in Geisinger's urology department. Dr. Simmons recorded that Gross "has pain almost all the time," rating the pain "6-10 depending on what he is doing." Dr. Simmons prescribed gabapentin, a drug sometimes used to treat nerve pain. When he returned for a follow up visit with her three months later, she recorded the gabapentin "helped [reduce his pain] about 70%." The medical plan was to wean him off the gabapentin by reducing dosage over time.

Gross filed for DIB and SSI with the Social Security Administration, alleging onset of his disability in November 2011. [2] His application was initially denied, but was reconsidered after a hearing before the ALJ. At the hearing, Gross testified that he obtained a GED, quit his job as a taxi driver due to safety concerns related to his health,

_____

[2] In addition to severe groin pain and concentration problems stemming from the pain, in his application for SSI and DIB Gross alleged various causes of his disability, including depression, obesity, hypertension, pancreatitis, obstructive sleep apnea, and anxiety. The record indicates treatment for these conditions, including psychological evaluations and counseling. Because only his complaints of severe groin pain are the subject of this appeal, however, we will not discuss his other conditions in depth.

3

and currently lives with his mother. He said he helps his mother around the house with occasional chores and cooking, such as running the vacuum[3] and heating frozen food in the microwave. Regarding the effects of gabapentin, Gross testified that "it takes the pain down from a ten down to a seven or an eight which . . . it's definitely a little bit of a help but it's still not, it still doesn't take the pain away and like I lay down and that takes it down sometimes to like a two or a three, maybe a four or somewhere around there which is tolerable to be able to possibly go to sleep."

Gross testified that he spends most of his time each day lying on the couch and watching television because it is the most comfortable position to manage his pain. He complained about the pain while sitting in the witness chair at the hearing, saying it was "getting pretty rough now." The ALJ invited him to stand up as necessary to alleviate the pain. Gross testified he had asked his doctors if removal of his testicles would correct the pain, but was told that would not help. He said he is usually unable to focus on television shows and falls asleep intermittently because of his trouble sleeping through the night. He reported in his SSA claim he is able to drive a car occasionally, though his mother drives him about half the time, use the toilet on his own, and occasionally mow the lawn, clean dishes, shop in a store, and manage his finances.

At the hearing, the ALJ heard testimony from a vocational expert concerning the availability of jobs in the national economy which Gross would be capable of handling. The ALJ asked the vocational expert to assume Gross was capable of sedentary work as

---

[3] He testified it may take him around a week or so to vacuum the house because he could only vacuum a room or two at a time and was not pressured into finishing all at once.

4

defined[4] in 20 C.F.R. 404.1567(a) and 416.967(a) with certain physical limitations not involving sitting or standing. The vocational expert testified Gross would be capable of working as a ticket counter, mail sorter, or document preparer, and that a significant number of these jobs existed in the national economy. When asked to assume Gross could sit for less than eight hours a day and stand for less than two hours, the vocational expert testified Gross would not be capable of performing any work available in the national economy.

The ALJ denied Gross's application for social security disability benefits.[5] She determined Gross was not disabled within the meaning of the Social Security Act because he had residual functional capacity to perform certain jobs available in the national economy.[6] The ALJ found that although Gross's medically determinable impairments

---

[4] Sedentary work is defined by the Federal Regulations as the least-physically intense work available. The regulations define sedentary work as "work [that] involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. 404.1567(a) and 416.967(a).

[5] To establish disability under the Social Security Act, a claimant must show that there is a "medically determinable basis for an impairment that prevents him from engaging in any substantial gainful activity for a statutory twelve-month period." *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987) (internal quotation marks omitted).

[6] The Commissioner applies a

> five-step process for evaluating disability claims. First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, then the Commissioner considers in the second step whether the claimant has a "severe impairment" that significantly limits his physical or mental ability to perform basic work activities. If the claimant suffers a severe impairment, the third inquiry is whether, based on the medical evidence, the impairment meets the criteria of an impairment listed in the listing of impairments, which result in a presumption of disability. . . . If the impairment does not meet the criteria for a listed impairment, then the Commissioner assesses in the fourth

could reasonably cause his symptoms, his "statements regarding the intensity, persistence and limiting effects of these symptoms are not entirely credible," noting that the record demonstrated an ability to perform sedentary work. The ALJ broadly stated this finding was "consistent with the objective medical evidence including diagnostic testing and measurable findings on clinical examinations [as well as his] activity level as indicated by his stated ability to cook, clean, vacuum, shop and perform personal care activities."

Gross requested review by the Appeals Council and submitted supplemental evidence consisting of medical records generated after the ALJ's decision. These records showed worsening testicular pain and the continued presence of hydrocele, which was enlarging, and varicoceles. He underwent additional surgeries for hydrocele repair in late 2013. The record indicates no complications from treatment. The Appeals Council found no basis to alter the ALJ's decision, leaving the ALJ's decision as the final decision of the Acting Commissioner of the Social Security Administration.

Gross then commenced a civil action in the District Court, contending the denial of his claims was not supported by substantial evidence. The District Court affirmed the ALJ's decision and entered judgment in the Acting Commissioner's favor. Gross timely appealed.

---

step whether, despite the severe impairment, the claimant has the residual functional capacity to perform his past work. If the claimant cannot perform his past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

*Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000). The ALJ determined Gross met the criteria for disability at the first four steps, but she concluded he was not disabled within the meaning of the Social Security Act based on her evaluation of step five, the final step.

## II.[7]

### A.

Our review is limited to determining whether substantial evidence justified the ALJ's decision that Gross was not disabled within the meaning of the Social Security Act. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)). We are bound by the findings of the ALJ if those findings are supported by substantial evidence, "even if we would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3 358, 360 (3d Cir. 1999). We are not "empowered to weigh the evidence" before the ALJ. *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

Gross contends the ALJ's decision was not supported by substantial evidence because the ALJ failed to give appropriate weight to his subjective complaints of testicular pain. An "ALJ must give serious consideration to a claimant's subjective complaints of pain, even where those complaints are not supported by objective evidence," and "[w]hile there must be objective evidence of some condition that could reasonably produce pain, there need not be objective evidence of the pain itself." *Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir. 1993) (quoting *Green*, 749 F.2d at 1071). Further, "[w]here medical evidence does support a claimant's complaints of pain, the complaints should then be given 'great weight' and may not be disregarded unless there

---

[7] The District Court had jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). We have jurisdiction under 28 U.S.C. § 1291.

exists contrary medical evidence." *Id.*

The ALJ concluded Gross's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." But the ALJ discounted Gross's complaints of pain, reasoning Gross's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." The ALJ also said Gross's "groin pain was controlled with the use of Gabapentin." She said "[t]he records do confirm pain or discomfort related to veins in the scrotum but the findings support an ability to perform sedentary work. . . . [This conclusion] is also consistent with the claimant's activity level as indicated by his stated ability to cook, clean, vacuum, shop and perform personal care activities."

The District Court affirmed the ALJ's conclusion that the medical records provided objective evidence of a medical condition that could reasonably produce Gross's testicular pain. Because of this, it said "this is a case where Plaintiff's complaints of pain should have been given great weight and could only be disregarded if there was contradictory medical evidence." *Id.* But the District Court noted "the only medical evidence referenced by the ALJ in direct correlation to Plaintiff's groin pain was that it was controlled by the use of Gabapentin." Although the ALJ did not identify actual medical evidence supporting this statement, she cited to a portion of the record spanning 160 pages which included Dr. Simmons's notation that gabapentin "has helped about 70%." The District Court inferred this reference by Dr. Simmons to be the medical evidence supporting the ALJ's conclusion that gabapentin controlled the pain. Calling this notation "significant and sufficiently direct to be considered evidence contradictory

8

to Plaintiff's subjective reporting of the extent and effects of his pain," the District Court held the ALJ's "credibility determination [regarding Gross's subjective assertions of pain] is due the deference ordinarily assigned."

**B.**

The District Court, in a thorough and thoughtful opinion, supplied a justification supporting the ALJ's conclusion that Gross's subjective complaints of pain could be appropriately discounted. But the ALJ must provide any such justification in the first instance. *See Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Where there is conflicting probative evidence in the record, we recognize a particularly acute need for an explanation of the reasoning behind the ALJ's conclusions, and will vacate or remand a case where such an explanation is not provided."). Although "we are conscious of our responsibility to 'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned,'" *Christ the King Manor, Inc. v. Sec'y of Health & Hum. Servs.*, 730 F.3d 291, 305 (3d Cir. 2013) (quoting *Motor Vehicle Mfgrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983)), "[n]evertheless, we should not 'supply a reasoned basis for the agency's action that the agency itself has not given.'" *Id.* (quoting *State Farm*, 463 U.S. at 43). In short, "this Court requires the ALJ to set forth the reasons for his [or her] decision." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000); *see also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981) ("There are cogent reasons why an administrative decision should be accompanied by a clear and satisfactory explication of the basis on which it rests.").

The ALJ failed to fully and clearly explicate reasons for discrediting Gross's

9

subjective complaints of pain.  In particular, the ALJ said Gross's "groin pain was controlled with the use of Gabapentin."[8]  The ALJ did not elaborate except for a citation to the record spanning about 160 pages which included the notation in Dr. Simmons's medical report after an evaluation of him.  Dr. Simmons noted "[t]he pain is moderate to severe 6-10 depending on what he is doing.  Activity seems to make it worse.  Lifting seems to make it worse."  She also went on to observe "[h]e was placed on gabapentin and it has helped about 70%."[9]

We disagree with the District Court that this notation amounts to substantial evidence sufficient to contradict Gross's subjective complaints of pain and support the ALJ's decision to discount those complaints.  Dr. Simmons's reference to the pain being controlled "about 70%" is ambiguous, particularly in light of her reference in the same report that the pain remained moderate to severe.  Furthermore, the ALJ's failure to elaborate on her statement that Gross's "groin pain was controlled with the use of Gabapentin" or offer specific citations to medical evidence in the record (beyond a broad swath of pages not necessarily relevant) makes any conclusions about her underlying

_____

[8] The ALJ did not elaborate further on this statement.

[9] Both of these statements appeared in the same evaluation report by Dr. Simmons.  A portion of the first statement (everything before the reference to gabapentin helping "about 70%") was recorded during a prior evaluation and repeated again by Dr. Simmons in her updated treatment notes.  The Acting Commissioner discounts Dr. Simmons's notation that the "pain is moderate to severe 6-10 depending on what he is doing" by contending "the first section of those notes is clearly memorializing Appellant's subjective complaints and not the result of objective testing."  Appellee Br. at 20 n.11.  But it is not clear to us there are different sections of the medical report, nor is it clear any part of the report memorializes objective findings.  On the contrary, it also seems plausible that the entire medical report details Gross's subjective complaints and reactions to Dr. Simmons's question.  In fact, nothing in the record suggests Gross's complaints of pain were properly evaluated in light of his subjective assertions.  This ambiguity was not addressed by the ALJ.

10

reasons speculative. In other words, we do not know whether the ALJ even had Dr. Simmons's report in mind when she stated in the opinion that gabapentin controls Gross' groin pain.

The reference by Dr. Simmons to gabapentin controlling pain "about 70%" is insufficient, standing alone, to amount to substantial evidence because "[a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). Here, there is a conflict not only within Dr. Simmons's report, but also with other evidence in the record. For example, although Dr. Simmons indicated in the medical report that the plan was to wean Gross off gabapentin over a three month period, starting in the Fall of 2012, his dosage of gabapentin was increased in February, 2013 by Dr. Gerstman. This could suggest the pain remained an ongoing issue for Gross. The medical records show he remained on gabapentin as late as September 2013 (albeit in smaller doses), discontinuing it by the end of that month.

Gross's subjective complaints of pain may also be supported by Dr. John's consultative examination. Dr. John is a state agency medical consultant who evaluated Gross on one visit in February, 2012. He opined, in relevant part, that Gross could "stand and walk for 1-2 hours of an 8 hour workday" and "sit for less than 6 hours in an 8 hour workday." Appellant Br. at 7. Dr. John also opined that Gross exhibited poor concentration which would affect his ability to work: he "cannot concentrate enough on

11

any given assignment." *Id.* The ALJ chose to discount[10] the significance of Dr. John's opinion because "this [finding] is not supported by the examination which revealed normal motor and sensory examination as well as no decreased range of motion." But Dr. John's finding that Gross exhibited no decreased range of motion is not necessarily inconsistent with a finding that he cannot sit for more than 6 hours—especially when Gross repeatedly testified he spends most of his days laying down because sitting causes him severe pain.

The ALJ's decision to discredit Dr. John's opinion is also significant because, according to testimony by the vocational expert at the hearing before the ALJ, Gross would be precluded from any gainful employment in the national economy based on the limitations expressed in Dr. John's opinion. Therefore, Gross's subjective claims of severe pain, if believed, would make him unable to perform even sedentary work, and

---

[10] Although the ALJ is entitled to make credibility determinations, including affording less weight to a consultative physician than a treating physician, the ALJ's credibility determinations regarding Dr. John and Gross himself are not supported. Specifically, while the ALJ also discredited Dr. John because he "is not a treating physician of the claimant and was relying solely and exclusively on one observation made on the day of the consultative examination," she credited a different consultative physician, Dr. Yohey, affording "significant weight" to her psychiatric evaluation of Gross. Where both doctors are consultative physicians, this fact alone cannot provide basis for distinguishing between the two. *See Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993) (explaining the treating physician doctrine "has no application" when no doctor in question is a treating physician). Additionally, the ALJ made an adverse credibility determination of Gross's statements, saying "the claimant's statements concerning [his pain] are not entirely credible for the reasons explained in this decision." But the ALJ never elaborated on this statement or explained the basis of this determination. The ALJ is required to explain what evidence supports credibility determinations because "[i]n the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Burnett v. Comm'r of Soc. Sec. Admin*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)).

thus disabled within the meaning of the Social Security Act. Because we do not believe the ALJ's decision to discount Gross's subjective complaints of pain was supported by substantial evidence, and because the District Court erroneously affirmed the ALJ's decision, we will vacate the District Court's order and remand the case with instruction to return it to the Commissioner for further proceedings consistent with this opinion. On remand, the ALJ should clarify why Gross's subjective complaints of pain are not entitled to great weight. The ALJ must specifically cite to medical evidence in the record that contradicts Gross's subjective complaints of pain and explain why such evidence undermines Gross's assertions. The ALJ must also resolve contradictory evidence in the record by explaining why she credits some evidence or medical opinions over others. More extensive treatment of these issues is necessary not only to facilitate our review, but also because "[t]hese proceedings are extremely important to the claimants, who are in real need in most instances and who claim not charity but that which is rightfully due as provided for in . . . the Social Security Act." *Hess v. Sec'y of Health, Educ. & Welfare*, 497 F.2d 837, 840 (3d Cir. 1974).

## C.

On remand, the ALJ should also consider additional medical evidence which was generated after the ALJ's decision in May 2013. This evidence includes medical records showing Gross remained on gabapentin through September 2013 and underwent two additional surgeries to alleviate his groin pain in the latter half of 2013. Because the ALJ issued her decision in May 2013, this evidence was not available to her. Gross submitted the evidence to the Appeals Council which summarily declined to consider it as grounds

13

for remand.  Under "Sentence Six" of 42 U.S.C. § 405(g),[11] this evidence is new and material because it was not available to the ALJ at the time of her decision, is probative of Gross's disability status, and is not duplicative of other medical records but conveys additional information about his status.  *See Szubak v. Sec'y of Health & Hum. Servs.*, 745 F.2d 831, 833 (3d Cir. 1984) (evidence is new if it is "not merely cumulative of what is already in the record" and material if it is "relevant and probative").  Further, because this evidence reflects Gross's ongoing pain and efforts to deal with that pain after the ALJ's finding that he was not disabled, the evidence could alter the ALJ's decision.  *See id.*[12]

## III.

For the foregoing reasons, we will vacate the District Court's order and remand the case with instruction to return it to the Commissioner for further proceedings consistent with this opinion.

---

[11] The sixth sentence of 42 U.S.C. § 405(g) is known as "Sentence Six."  It conveys authority to judicial courts  to remand to the ALJ for review of additional evidence if the evidence is "material and . . . there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  42 U.S.C. § 405(g).

[12] The Acting Commissioner contends Gross waived his claim for remand based on the new evidence of his ongoing use of gabapentin and additional surgeries because he did not raise this claim before the District Court.  We need not decide whether waiver occurred here, however, because we determine remand is appropriate on other grounds.

14